Fred W. Wolf, Jr., et al. Appellees, vs. Anna Louise Uhlemann et al.—(The Northern Trust Company, Trustee, Appellant.)

*Opinion filed April 20, 1927.*

1. Wills—*when doctrine of class representation applies.* The doctrine of class representation, that persons not *in esse* may be bound by a decree affecting their contingent interests, applies where such persons are represented by living members of the same class who are parties to the suit and whose interests are such that they are as certain to bring forward the entire merits of the question as would the persons not *in esse* in protecting their interests.

2. Same—*when family settlement will be given effect—minor.* Members of a family are not privileged to alter the terms of a will merely for their own convenience or to secure greater advantages than those specified in the will and intended by the testator, but where the will makes a complicated restriction and disposition of the estate which must extend over a long period of years, raising questions as to its validity and construction, and where it is reasonable to believe that prolonged and expensive litigation will result, the parties interested are warranted in preventing such controversy over the will by an impartial settlement agreement, and equity will give effect to such agreement by a decree binding all parties and authorizing the guardian of a minor beneficiary to become a party thereto.

3. Same—*when trustee cannot object to family settlement.* A trust company which was given an entire estate in trust for the purpose of distributing the income and the *corpus* thereof in accordance with complicated provisions in a will and which does not claim any beneficial interest in the fund cannot object to a family settlement agreement by all the beneficiaries under the will, where a decree approving the agreement at the suit of a minor, by his guardian, binds all the parties in interest and protects the trustee in the distribution of the fund.

4. Minors—*a minor's litigation may be compromised for his benefit.* Courts of equity may authorize the compromise of a minor's litigation where the evidence shows the compromise was proper and for the best interest of the minor.

Appeal from the Superior Court of Cook county; the Hon. Oscar Hebel, Judge, presiding.

SCOTT, BANCROFT, MARTIN & MACLEISH, (JOHN E. MACLEISH, CHARLES M. PRICE, and FRED SCHROEDER, JR., of counsel,) for appellant.

EVERETT L. MILLARD, guardian, for appellee Fred W. Wolf, Jr.; WALTER D. HAWK, for appellee Ann Wolf Loftus; and McNAB, HOLMES & LONG, and LOUIS J. BEHAN, (SAMUEL S. HOLMES, of counsel,) for other appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal prosecuted by the Northern Trust Company, as trustee under the will of Anna A. Wolf, deceased, from a decree of the superior court of Cook county entered September 11, 1926, approving a family settlement agreement and authorizing the execution thereof by the guardian of the minor grandchild, who is a beneficiary under the will.

The bill in this case was filed in July, 1926, by Ann Wolf Loftus and Fred W. Wolf, Jr., a minor, by his guardian. They were the only living grandchildren of the testatrix. Anna Uhlemann and Fred W. Wolf, the only living children of the testatrix, with their respective spouses, and the Northern Trust Company, trustee under the will of Anna A. Wolf, were made defendants. The bill alleged that Anna A. Wolf died during January, 1923, leaving a will executed in November, 1913, and two codicils thereto, executed in 1920 and 1921. Copies of the will and codicils were attached to the bill. The will and codicils were admitted to probate in January, 1923, letters testamentary were issued to the Northern Trust Company as executor, and the estate was duly administered upon. The executor was discharged in June, 1925, and thereafter continued as trustee of the estate under the provisions of the will. The personal estate of the testatrix was valued at approximately $1,400,000 and the value of the real estate approximately $400,000. The personal estate consisted chiefly of cash,

mortgage notes, stocks, bonds, etc., and the real estate of various parcels of land, with improvements thereon, located in Cook county, Illinois. The net annual income from the real and personal property belonging to the estate was in excess of $60,000. The bill also set out the substance of certain provisions of the will providing, during a period of twenty-one years after the testatrix's death, for an annuity to the testatrix's daughter and son, for the care and education of the grandchildren of the testatrix, and also for an annuity to each grandchild after such grandchild had reached the age of twenty-one years. The bill further alleged that Anna Uhlemann and Fred W. Wolf were the only children of testatrix at the time of her death; that the daughter was at that time fifty-two years of age, was married and had had no children born to her; that the son was forty-four years of age when his mother died, was married and had two living children, who are the complainants in the bill. Ann Wolf (now Ann Wolf Loftus) at the time of the death of her grandmother was nineteen years of age and Fred W. Wolf, Jr., then twelve years of age. The bill further alleged that the parties named in the bill as complainants and defendants are the only living persons who have any right, title or interest in and to the property and estate of the testatrix; that the Northern Trust Company, as trustee, had paid over to the four beneficiaries, under the terms of the will of the testatrix, approximately $63,000, and that there remained in the possession of the trustee, as accumulated income from the estate, approximately $175,000. The bill further alleged that complainants' aunt and father have prepared their bill of complaint asking for the construction of the will and codicils of the testatrix, and have threatened, and now threaten, to file said bill in a court of chancery seeking the construction thereof; that the parties charge that because of ambiguity, uncertainty and indefiniteness the will and codicils thereto were null and void, and that as the only living children and

descendants of the testatrix the aunt and father are entitled, as next of kin and heirs-at-law, to the ownership of all the property and estate of the testatrix; that Anna Uhlemann and Fred W. Wolf claim that doubts and uncertainties had arisen as to what disposition was to be made of the net income arising from the personal property and real estate held by the trustee under the will in excess of the sums specifically provided by the first codicil and in sub-paragraphs (*a*), (*b*) and (*c*) of paragraph 2 of article 2 of the will, to whom the same was to be paid, or as to whether the same was to be accumulated, and if to be accumulated, for how long a period; that doubt existed as to the powers of the Northern Trust Company regarding the investment of the proceeds of sales of real estate, the investment of maturities or disposition of personal property; also as to the power of the trustee to make sales of either real or personal property, as to whether there could be any *cestui que trust* within the term of twenty-one years next after the decease of the testatrix, and as to whether or not the provisions of the will regarding the disposition of the *corpus* of the estate are in violation of the rule against perpetuities, and if so, the effect thereof upon the remaining provisions of the will. The bill further alleged that numerous discussions in regard to the controversies arising over the validity of the will had taken place between complainants, their agents and attorneys and their aunt and father, and that such discussions had extended over a period of several months; that all of the parties having a beneficial interest in the estate had lived for many years in the same community, had always been harmonious and sympathetic in their family affairs, and were desirous of maintaining the same intimate family relations as had previously existed; that the respective parties, as a result of the controversies, had consulted counsel, and had been advised that there were serious questions with respect to the construction of the will and as to the validity of the will and codicils.

It was also stated that the parties beneficially interested desired an amicable settlement and adjustment of the matters in controversy, and in the various discussions between the parties it was understood and agreed by and between all of the parties that the complainant Fred W. Wolf, Jr., a minor, stood in a similar relation in all the discussions, investigations and controversies as did his sister, Ann Wolf Loftus, and that such minor should be given every benefit arising from any discussion or negotiation; that as a result of these discussions and investigations Anna Uhlemann and Fred W. Wolf have had prepared and have submitted to complainants a draft of an agreement which they are willing to enter into with Ann Wolf Loftus, and with Fred W. Wolf, Jr., through his guardian, provided the court, after examination and consideration of the same, will authorize the execution of such an agreement by the guardian. The bill also alleged that the guardian had some doubt as to whether he would be authorized to execute such proposed agreement on behalf of his ward whereby the provisions thereof would be forever binding upon the infant, and that the guardian was unwilling to execute such an agreement without the authorization of the court; that it was the opinion of the guardian, who is an attorney at law, that serious doubts exist as to whether the proposed attack against the will could be successfully maintained, but that the same would result in protracted litigation, would perhaps result in delay as to the administration and distribution of the property of the estate, would involve large expenditures and expenses, and that such litigation would perhaps result in creating dissension among the relatives and members of the families; that the guardian had investigated the facts and circumstances involved in the controversy, and that from his investigation believed the proposed contract would be advantageous to his ward. The bill also alleged that Anna Uhlemann and Fred W. Wolf and their respective spouses are ready and willing to co-

operate, so far as might be necessary, for the purpose of carrying out the proposed agreement, and that they and complainants were the only persons now in being who are or may be interested in the estate of the testatrix; that any descendants or issue of Anna Uhlemann or Fred W. Wolf who may hereafter come into being will stand in the same right as complainants, and that the rights and equities of any such descendants or issue will be protected and their claims concluded by decree rendered in this proceeding, and that for the purpose of class representation the present grandchildren, who are complainants, will represent all of the unborn persons who may hereafter come into being. The bill prayed that complainants may obtain the advice, instructions and finding of the court in regard to the questions as to whether the proposed agreement was an advantageous one for the infant complainant, Fred W. Wolf, Jr., and his guardian, to enter into, and as to the powers and duties of the guardian; that if the agreement be found by the court to be advantageous, the court decree and authorize the execution thereof on the part of such infant, and in that event the agreement be carried out under the supervision, order and direction of the court, and that the Northern Trust Company, as trustee, be authorized and directed to make the distributions and payments provided therein.

The defendants Anna Uhlemann and Fred W. Wolf and their respective spouses answered the bill of complaint, admitting the allegations therein and offering to enter into the proposed agreement and to execute and deliver the necessary deeds and instruments to carry out the provisions thereof. The Northern Trust Company, as trustee, also filed an answer admitting the allegations relative to the execution of the will and its probate. It set up that it was not advised concerning any alleged controversy or of an offer to make a settlement thereof. It further set up there was no serious doubt with respect to the will and codicils executed by the testatrix and hence no need for controversy

between the beneficiaries under the will. The answer also averred that the trustee was required to pay out and distribute the trust estate, and the income thereof, under the provisions of the will; that it should not be required to make distribution of the trust estate under the proposed settlement agreement, and that the court had no jurisdiction to approve the settlement contract for the reason that unborn children or issue of the parties were not, as a class, represented by any person made a party to the bill.

The cause was referred to a master in chancery to take the evidence and report his conclusions. Complainants introduced before the master the will of the testatrix and codicils thereto, a certified copy of an inventory filed by the Northern Trust Company as executor, a certified copy of the appointment of the guardian of the minor complainant, and a draft of the proposed settlement contract. They also introduced the testimony of Fred W. Wolf and Anna Uhlemann, defendants to the bill; also the testimony of the guardian of the minor complainant, and of Ann Wolf Loftus, to substantiate and prove the allegations made in the bill. There was no cross-examination of any of these witnesses. The testimony of one of the trust officers of the Northern Trust Company was also received showing the amount of money paid to the several beneficiaries as well as the amount of funds which had accumulated in the hands of the trustee.

The master reported that the court had jurisdiction of the subject matter and of the parties; that the proposed settlement agreement was an advantageous one to the minor complainant and was for the best interests of his estate; that his guardian has the power and right to execute such agreement, and that the agreement executed and delivered will forever and finally preclude the children of the testatrix from attacking the validity of her will. The master found that complainants stand in representation of each and every issue of Anna Uhlemann and Fred W. Wolf

who may hereafter come into being; that the court has the power and jurisdiction to determine and adjust the rights and equities of any and all of said issue who may come into being, and that the Northern Trust Company, in making distribution and payments as such trustee, will be fully protected against any after-born issue. The master recommended that the guardian of the minor be authorized to execute and perform the proposed agreement; that the defendant beneficiaries be authorized to execute and deliver proper deeds and instruments whereby they, and each of them, release, covenant and agree that the last will of the testatrix shall be treated and considered as such according to its terms, subject to the provisions of the proposed settlement agreement, and that they be authorized to execute and deliver to the trustee deeds conveying all their right, title and interest in and to the real property previously belonging to the testatrix; that the Northern Trust Company, as trustee, be directed and authorized to make the distribution mentioned in the proposed settlement agreement and in accordance with the terms thereof. The master further found that the allegations of the bill were true and that complainants were entitled to a decree, and recommended that a decree be entered in accordance with the prayer of the bill and the findings in his report.

The Northern Trust Company, as trustee, filed various objections to the master's report, all of which were overruled and stood as exceptions. The court, after hearing argument of counsel upon exceptions to the master's report, overruled the same and entered a decree in accordance with the report and the prayer of the bill. The decree set out that doubts and questions exist as to the validity and construction of the will of Anna A. Wolf, deceased, which would have to be determined by a court of equity on a bill to construe the will. The court by its decree reserved jurisdiction of the cause for all purposes connected with the execution of the proposed settlement agreement. From

that decree the Northern Trust Company, as such trustee, has prosecuted an appeal to this court.

The respective parties to this litigation are represented by separate counsel, each of whom have filed briefs and arguments in this court. All the parties beneficially interested under the will of Anna A. Wolf in the ultimate distribution of income and principal of the trust fund were represented by counsel in the lower court, and the result of the decree there entered, so far as such parties are concerned, is seemingly satisfactory. The Northern Trust Company, as trustee, has no beneficial or pecuniary interest in the trust fund except such interest as it may have in obtaining remuneration for services to be rendered in its official capacity, and its position as such under the will has not been materially affected by the proposed settlement agreement. The trustee, as sole appellant here, does not profess to represent any beneficiary of the trust fund but furthers the appeal in its own behalf. Several errors have been assigned by appellant, only one of which, as we view the situation, is such as might affect the trustee. The chief contentions of the trustee are, (1) that as the will provided that the estate was to be divided ultimately among the surviving issue of the children of the testatrix after the death of such children, and as such surviving issue might not now be in being, the court would have no authority or power by decree to bind such unborn issue surviving at the death of the testatrix's children; or, put in another way, if any remaindermen not *in esse* are not represented by complainants as members of the same class, appellant might be called upon in the future to pay out money to such remaindermen, which funds the lower court has decreed shall be paid by the trustee to the children of the testatrix under the family settlement agreement; (2) that no doubt existed as to the validity of the will in whole or in part, and hence there was no basis or foundation for the making of the family settlement agreement.

By article 1 of the will the testatrix directed that all her just debts and funeral expenses be paid. By article 2 she devised and bequeathed to the Northern Trust Company, of Chicago, all the rest, residue and remainder of her estate, real, personal and mixed and wheresoever situate, upon certain trusts mentioned. First, to pay out of the first moneys, either cash or from maturities, coming into the hands of the trustee, a certain specific legacy to the brother-in-law of the testatrix and other legacies to different charities, all of which totaled $30,000. One of these, in amount of $3000, was revoked by the second codicil executed by the testatrix. The other provisions of the will discussed by counsel are as follows:

"*Second*—To pay, out of the income of my said estate, for a term of twenty-one (21) years, from the time of my death, or until the prior decease of the persons hereinafter named, the sums as follows:

"(*a*) To my daughter, Anna Louise Uhlemann, if she shall survive me, the sum of three thousand dollars ($3000) a year, and in case she shall become a widow, then from such time, the sum of four thousand ($4000) a year in lieu of the sum of three thousand dollars ($3000) a year first above mentioned, such payments to continue until she is sixty (60) years old, if she shall attain such age during said twenty-one year term, and from the time she shall have attained such age, the sum of eight thousand dollars ($8000) a year. [This latter amount was changed to $5000 a year by the first codicil executed by the testatrix.]

"(*b*) To my son, Fred W. Wolf, if he shall survive me, the sum of three thousand dollars ($3000) a year until he is sixty (60) years old, if he shall attain such age during said twenty-one year term, and from the time he shall have attained such age, the sum of eight thousand dollars ($8000) a year. [This latter amount was changed to $5000 a year by the first codicil executed by the testatrix.]

"(c) To pay out, use and devote all moneys necessary to provide, care for and educate any child or children of my son or daughter living at the time of my death or born thereafter, provided that when any of my said grandchildren shall have become twenty-one (21) years old, then when he or she shall have attained such age, to pay such grandchild the sum of one hundred dollars ($100) a month in lieu of the moneys necessary to provide, care for and educate him or her, as in this paragraph first stated.

"*Third*—At the end of twenty-one (21) years from the time of my death, to pay over the income of my estate, after making the payments hereinbefore mentioned, in the manner, to the person, and in the sums as follows:

"(a) To my daughter, Anna Louise Uhlemann, if she has no issue then living, for and during her natural life, or in case she has issue then living, then to her and her said issue and the survivor or survivors of them, for and during the life of the survivor of my daughter and my son, one-half of the said income of my estate, my daughter and her children, if any there should be, each taking an equal share, and the issue of a deceased child of my daughter, if any there should be, taking *per stirpes* and not *per capita.*

"(b) To my son, Fred W. Wolf, and his issue, and the survivor or survivors of my son and his issue, for and during the life of the survivor of my son and my daughter, one-half (½) of the said income of my estate, my son and his children each taking an equal share, and the issue of a deceased child of my son taking *per stirpes* and not *per capita.*

"(c) In case my son or daughter shall have died prior to the end of said twenty-one (21) year term, leaving no issue him or her surviving, then commencing at the end of said twenty-one year term, or in case he or she shall die after said twenty-one year term leaving no issue him or her surviving, then upon his or her death, to pay to the issue then living of the survivor of my son or daughter,

the income of my estate that would have been taken by my deceased son or daughter, and his or her issue, if they had lived, the children of my surviving son or daughter each taking an equal share, and the issue of a deceased child of my son or daughter taking *per stirpes* and not *per capita,* the payments in this paragraph mentioned to be continued until the time such issue shall have become entitled to a share of the *corpus* of my estate, as hereinafter provided.

"(*d*) In case, at the time mentioned in the next preceding paragraph (*c*) hereof, the survivor of my son and daughter shall have no issue then living, then from the time mentioned in said paragraph (*c*), or in case the survivor of my son and daughter shall thereafter survive all of his or her issue, then from the time of the death of the longest liver of said issue, to pay to the survivor of my son and daughter the whole income of my said estate for and during his or her natural life.

"*Fourth*—At the end of said twenty-one year term, in case of the death of my son and my daughter prior thereto, or upon the death of the survivor of my son and daughter, in case of his or her death after said twenty-one year term, to divide all the rest, residue and remainder of my estate among the surviving issue of my said son and daughter, the children of my deceased son and daughter each taking an equal share, and the issue of a deceased child of my son and daughter taking *per stirpes* and not *per capita.* The respective shares of such of my grandchildren and their issue as shall have become entitled to a distributive share of the residue of my estate and shall have attained the age of forty (40) years, to be paid over at the time of such division, and the shares of such of them as shall not have attained the age of forty years to be paid over to them, respectively, when and as they shall attain such age. But notwithstanding the time of payment the respective shares of such grandchildren and their issue shall become vested in them absolutely at the time first above mentioned in the

next preceding paragraph of this the fourth clause of my will, and said legatees shall be entitled to receive the entire income of their respective shares from the time of such division.

"*Sixth*—I hereby nominate and appoint the Northern Trust Company, of Chicago, executor of this my last will and testament, and trustee hereunder.  Said executor shall have full power to administer my affairs and settle my whole estate as to it may seem meet and proper.  It shall have full power to sell and convert any and all of my personal estate not specifically devised or otherwise directed to be disposed of herein upon whatever terms and conditions it may seem meet, and I hereby authorize it to exercise its discretion as to the time of disposal of such investment stocks and securities as I may have at the time of my decease.  It shall also have full power to bargain, sell, convey and mortgage, on such terms as it may see fit, any part or parts of the real estate coming to it under this will, and the purchasers are hereby exonerated from all obligation to see to the application of moneys paid as purchase moneys. In making the distribution of my estate by it required to be made, I authorize and direct it to make distribution in kind if it so elects, (except as otherwise specifically directed,) and to such extent as it shall determine, and place such value on the property given to the various legatees as it shall determine, and such valuation shall be final and conclusive upon such legatees, and my said trustee may make the payments, of the income of my estate, to the said legatees in such installments and at such times as it deems advisable so to do, and without being required to pay interest thereon."

It will thus be seen that out of the income of the estate the son and daughter of the testatrix are to receive $3000 per year for a term of twenty-one years after the death of the testatrix, or until either shall reach the age of sixty years, provided such age is reached within said twenty-one

year period, and after reaching that age the annuity to
each is increased to $5000 per annum. After the period
of twenty-one years from the death of the testatrix the will
provides for the distribution of the income of the estate
among the children of the testatrix and their respective
issue. Under the will the two grandchildren now living
would receive until twenty-one years of age such sum as
the trustee thought necessary for their care and education,
and thereafter for the balance of the twenty-one year period
after the testatrix's death the sum of $1200 each per an-
num. After the twenty-one year period, and until they
should receive their respective shares of the *corpus* of the
estate at the age of forty years or more, provided all fam-
ily conditions remain the same, they would receive two-
sixths of the total income so long as their father lived, and
if their father died, then one-half of such income. The
ultimate distribution of the *corpus* of the estate is provided
for under paragraph 4 of the will, after twenty-one years
from the death of the testatrix and after the death of the
survivor of her two children. Each grandchild or its is-
sue is to then receive its respective share, provided it has
reached the age of forty years. Under present family
conditions, and while the testatrix's two children and two
grandchildren are living, the sum to be paid out of the in-
come under the will for several years after the minor grand-
child reaches twenty-one years, at which time the aunt will
have reached the age of sixty, will be $10,400 per annum.

The proposed settlement agreement is also lengthy, and
we shall undertake to state only the substance of its most
important provisions. The agreement was to be executed
by all of the complainants and defendants to this litigation
who had a beneficial or pecuniary interest, as legatees or
devisees, under the will of Anna A. Wolf. The contract
provided that the net income of the estate, commencing Jan-
uary 1, 1926, so long as such net annual income exceeded
$60,000, should be distributed among the children of Anna

A. Wolf and their children now living or hereafter born, or their issue, to the extent of $30,000 annually during a period of twenty-one years from the decease of Anna A. Wolf, and in case the net income is less than $60,000, then only one-half of such income should be distributed among the persons named therein and in accordance with the terms of the agreement. The two children of the testatrix, while both live, are each to receive annually one-third of $30,000; if either dies the survivor is to receive one-half of $30,000 annually; if no issue survives the children, then the survivor of the two children is to receive annually the entire one-half of the income, or $30,000. During this same twenty-one year period, if no other grandchildren are born, the two living grandchildren will each have an income of $5000 per year unless their father or aunt dies, when the annual income of each will be $7500, and if both aunt and father die the income to each will be $15,000 per year. After the expiration of twenty-one years from the date of the death of the testatrix the agreement made a somewhat different, though similar, arrangement in the distribution of the entire income. We think it unnecessary to state all the proposed distribution plan in detail. It is sufficient to say that if no changes in family conditions occur, and so long as the two children of the testatrix live, the two grandchildren will receive annually five-twelfths of the total income; if their aunt dies first, with no change in heirs, the grandchildren will receive three-fourths of the total income per year; if their father dies first, leaving the aunt surviving, and there is no change in heirs, the grandchildren will receive two-thirds of the total income annually. Under any contingency mentioned in the agreement, after the twenty-one year period from the death of the testatrix the share of the grandchildren is increased. The agreement also provided that the two children of the testatrix each release and discharge any right or claim to attack the validity of her will; that they will execute all instruments necessary to

carry out the proposed settlement agreement and release
any and all claim to any real property and estate of the
testatrix, and that the approval of the agreement and of
its execution by all the parties beneficially interested there-
in, by a proper court of chancery jurisdiction, would be ob-
tained by the institution of the necessary legal proceedings.

It may be said that the principal feature or provision
in the proposed settlement agreement is, that if all of the
present parties interested live for and during the period of
twenty-one years after the death of the testatrix each of
her two children will receive under the contract $10,000
per annum instead of $3000, (or $5000 when such child
reaches the age of sixty years,) and each grandchild after
reaching the age of twenty-one years will receive $5000
annually instead of $1200. The balance of the large in-
come and accumulations would remain in the possession of
the trustee.

The contention of the appellant that remaindermen not
*in esse* are not represented in this litigation to approve the
family settlement agreement is perhaps the only question,
under the errors assigned, whereby the rights of appellant
might be affected in any way. Paragraph 4 of the will
provides for the ultimate distribution of the *corpus* of the
estate among the surviving issue of the testatrix's son and
daughter or their issue. The two grandchildren, who are
complainants here, are the only grandchildren now living,
and if they survive until the time of division or ultimate
distribution they will be members of the class described in
paragraph 4 of the will. At present the two grandchildren
are the only living members of the class of persons named
in the will to receive the *corpus* of the estate. The inter-
ests of these grandchildren in being are the same as of any
grandchild that might be born in the future. The theory
upon which the unborn members of a class are bound by
representation of other members of the same class is, that
the interests of the members of the class present in court

are such that they are equally certain to bring forward the entire merits of the question so as to give the contingent interests effective protection. The doctrine of class representation has long been recognized in this and other jurisdictions. (*Hale* v. *Hale,* 146 Ill. 227; *Longworth* v. *Duff,* 297 id. 479; *Gavin* v. *Curtin,* 171 id. 640; *New York Life Ins. and Trust Co.* v. *Conklin,* 144 N. Y. Supp. 638.) There can be no question under the authorities that the remaindermen not *in esse* were represented by living members of the same class who are parties to the suit and that the decree protects appellant in making distribution.

In *Hale* v. *Hale, supra,* the court said: "In the present case the decree makes the same disposition of the rights of the grandchildren not in being as it does of those who are in being and who were made defendants to the bill. Of those who were thus made defendants part were adults, who answered and defended for themselves, and part were minors, who answered by their guardian *ad litem,* and thus referred their rights to the consideration and protection of the court. The rights of those *in esse* and those not *in esse* are protected by the decree in precisely the same way and to the same extent. * * * In all this the grandchildren not *in esse* have been fully represented and their rights have been fully defended and protected by those in being. The decree therefore must be held to be valid as a conclusive disposition of the rights of all the beneficiaries, as well those not *in esse* as those who were made defendants to the bill by name."

In *Longworth* v. *Duff, supra,* the court stated as a general rule that the interests of parties not before the court in a proceeding in equity would not be bound by the decree, but said: "This general rule applies to all judicial proceedings, but an exception to it is recognized in cases where a party, though not before the court in person, is so far represented by others that his interest receives actual and efficient protection. The doctrine is especially applicable where

the persons who are not before the court are only possible parties not in being and where the interests of all parties require a decree which will completely and finally dispose of the subject matter of the litigation. Such parties can not be brought before the court in person, and because of the inconvenience and injustice of requiring the rights of all parties in being to await the possible birth of persons who may in any contingency acquire an interest in the property the doctrine of representation has been recognized, by which, if persons are before the court who have the same interest and are equally certain to bring forward the entire merits of the question so as to give the contingent interests effective protection, the court will render a complete decree, which will be binding upon the contingent interests in reversion or remainder." To the same effect is *Baker v. Baker,* 284 Ill. 537, and other cases in this court not necessary to cite. In *New York Life Ins. and Trust Co. v. Conklin, supra,* (a case which is very much in point,) will be found a thorough discussion and citation of cases in harmony with the rules stated by this court.

An examination of the proposed settlement agreement shows that the living issue of the testatrix's children placed themselves upon an equal basis with all future-born issue. There is no claim or showing on the part of anyone that the proposed family settlement agreement was not fair to all parties having a pecuniary interest in the estate or that any unborn issue has been or can be injured or prejudiced thereby.

The bill filed in this case alleged some of the objections or contentions made by the two children of the testatrix to the provisions of their mother's will. The proof offered before the master showed the complainant grandchildren were threatened with litigation over the construction and validity of the will. The decree of the superior court found that doubts and questions exist as to the validity and construction of the will and that such would have

to be determined by a court of equity on a bill to construe it. Counsel for all the parties involved herein except the trustee present questions concerning the construction and validity of the will which they claim are not free from doubt. Apparently the questions raised and argued by counsel for the beneficiaries are presented in good faith, though the position is taken that the trustee is not concerned in and should not be permitted to further any of the legal propositions advanced by it in support of what it terms is the plain and clear meaning of the will as well as its validity. The construction and validity of the will are not presented to us for decision, but the question is rather whether sufficient or substantial doubt exists as to the validity or meaning of the will to warrant the beneficiaries thereunder entering into a family settlement agreement. Undoubtedly, the members of a family are not privileged to alter the terms and provisions of a will merely for the convenience of the family or for the sole purpose of securing greater individual financial advantages than those specified in the will and intended by the testator. However, the rule is well established that courts of equity favor the settlement of disputes among members of a family by agreement rather than by resort to law. Where there is a reasonable or substantial basis for the belief or assurance that prolonged and expensive litigation will result over the proceeds or distribution of an estate, that the estate will be materially depleted and that the family relationship will be torn asunder, the parties interested therein are warranted in preventing such *bona fide* family controversy by a settlement agreement. Obviously, such an agreement must be impartial in every respect and must be obtained without fraud or deception. *Cole* v. *Cole,* 292 Ill. 154; *McDole* v. *Kingsley,* 163 id. 433; *Hall* v. *Hall,* 125 id. 95; *New York Life Ins. and Trust Co.* v. *Conklin, supra.*

The will makes a complicated restriction and disposition of the estate, which must extend over a long period

of years and may extend over a very long period. In all of the briefs, among the questions argued are whether the will violates the Illinois Accumulation statute; (Cahill's Stat. 1925, sec. 145;) whether it violates the rule against perpetuities; and whether there is such doubt, uncertainty and ambiguity in the will as to require or justify a construction of it by decree of court to determine its meaning and validity in whole or in part. Appellant's argument is that the will is clear and unambiguous and is not open to any construction that would be detrimental to the testatrix's grandchildren. On the other hand, all the other parties argue that the will is uncertain as to the rights of the testatrix's children and grandchildren in being. It is sufficient for us to say that the will is so involved and complicated and its provisions so uncertain in legal meaning that the parties beneficially interested in the estate might well doubt what their rights are under the will, and its ambiguity would justify them in seeking to have the will construed. These considerations led to the making of the compromise family settlement and the filing of the bill by the minor grandchild of the testatrix, and his sister, Ann Wolf Loftus.

Appellant, as trustee, did not have or claim to have any beneficial interest in the fund. The trustee's rights and interests were not affected by a decree which bound all the parties in interest and protected the trustee in the distribution of the fund. It was no concern of the trustee how the parties beneficially interested settled the threatened controversy if the trustee was protected in making the distribution. That seems to be the only question the trustee had any interest in or should be concerned about. In *Merrill* v. *Atwood,* 297 Fed. 630, the district court of Rhode Island held that a testamentary trustee, as against the heirs and beneficiaries in a trust, was practically a stakeholder. (See, also, *Press* v. *Woodley,* 160 Ill. 433; *Barth* v. *Richter,* 12 Col. Ct. of App. 365; *Ratliff* v. *Patton,* 37 W. Va. 197; *Schwartz* v. *Ritter,* 186 Ill. 209.) In this appeal ap-

pellant does not assume to represent any of the beneficiaries under the will, and while it argues the question whether the will is ambiguous and requires construction or whether it is valid in whole ·or in part, those questions cannot affect appellant whichever way they might be decided, but appellant was and is interested in the determination whether the remaindermen not *in esse* are represented in court by the parties to the suit.

One of the complainants in the bill filed ₒbelow was a minor. Courts of equity may authorize the compromise of a minor's litigation where the evidence shows the compromise was proper and for the best interest of the minor. *Matthews* v. *Doner*, 292 Ill. 592; *Williams* v. *Williams*, 204 id. 44.

The children of the testatrix were at the time of her death fifty-two and forty-four years of age, respectively. They were not permitted to enjoy the benefits of any material portion of the large estate for twenty-one years after the testatrix's death. A sum of more than $50,000 per year would for that twenty-one year period continue to accumulate in the hands of the trustee and there remain, adding an additional million dollars or more to the *corpus* of the large estate, unless it was the testatrix's intention to have the accumulated income distributed under paragraph 3 of her will. While, as we have before remarked, we are not called upon in this case to determine whether the will is valid or invalid or to construe its meaning, we think the proper execution of the trust made the determination of the validity or proper construction of the will by a decree of a court of equity desirable if not absolutely necessary. There is no charge of fraud involved in the family settlement, nor is it claimed the settlement as approved by the decree is not beneficial to those who are beneficiaries under the will.

We are of opinion the decree of the superior court was correct and should be affirmed.          *Decree affirmed.*