MARTHA S. NEILL, *et al.,* Appellees, *vs.* GEORGE D. KIMBALL *et al.*—(PETER FINDER, Appellant.)

*Opinion filed May 16, 1944.*

SMITH, BUNDESON, WHITE & RAYNOR, of Chicago, for appellant.

MAX KRAUSS, and H. J. ROSENBERG, (ABRAHAM MILLER, of counsel,) all of Chicago, for appellee Louis Yampolsky.

SHULMAN, SHULMAN & ABRAMS, (MEYER ABRAMS, of counsel,) of Chicago, for other appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

The initial question requiring consideration on this appeal is whether a freehold is involved, within the contemplation of section 75 of the Civil Practice Act. (Ill. Rev. Stat. 1943, chap. 110, par. 199.) From the pleadings and the evidence it appears that in 1931 a plan of reorganiza-

tion was effected by a bondholders' protective committee representing bonds secured by a trust deed in the nature of a mortgage on property located at 6151 Winthrop avenue, Chicago. Pursuant to this plan, Winthrop Towers Hotel Corporation was created; a new mortgage securing a note for $200,000 was executed; 5½ per cent cumulative preferred and common shares were issued, for the benefit of bondholders and owners of the equity of redemption, respectively, and all the preferred and common shares were placed in trust, according to the terms of a trust agreement, dated August 20, 1931, naming three trustees to manage the real estate until retirement of the preferred shares and payment of all accrued dividends. Beneficial trust certificates were issued, representing the preferred and common shares. The trust agreement requires the consent of the owners of two thirds of the preferred stock trust certificates to effectuate a sale or lease of the premises. More than ten years after the plan of reorganization had been in operation, the plaintiff, Martha S. Neill, on behalf of herself and other holders of the beneficial trust certificates, filed a complaint against the defendants, the three trustees under the trust agreement, in quest of relief, including dissolution of the trust and sale of the property. The cause was referred to a master in chancery who, on April 29, 1943, filed his "Interim Report" stating that bids for the purchase of the property had been received and recommending (1) the solicitation of further bids, (2) that the contemplated sale be subject to approval by not less than two thirds of the total number of units representing preferred shares, and (3) that the net proceeds of the sale be distributed *pro rata*, 90 per cent and 10 per cent, respectively, to holders of trust certificates issued for preferred and common shares. May 3, 1943, the chancellor entered a decree in substantial accord with the recommendations of the master. The decree provided, among other things, that the trustees accept a present bid of $252,500,

evidently the bid of Louis Yampolsky, subject to the terms of a contract to be submitted to the court for its approval, and that they receive further bids upon prescribed terms and provisions, all subject to approval by the court. Jurisdiction was reserved for the purpose of vacating, modifying or altering the terms of the decree in the event the requisite two-thirds vote for the sale of the property was not procured within ninety days from the date of the decree.

May 25, 1943, a second decree was entered approving the form of contract to purchase the premises submitted by Yampolsky, designated as exhibit "A," subject to future higher bids. In paragraph "C" of a rider attached to and made a part of the contract, Yampolsky was given the privilege of increasing his offer to meet any subsequent increased offer which might be received. Also approved in the decree is a form of contract, described as exhibit "B," for submission to subsequent prospective bidders. The decree further provided for the mailing of a notice to all holders of trust certificates for preferred stock, as shown by the records of the corporation.

August 4, 1943, a third decree was entered, finding that a later bid of $272,500, submitted by Jacob L. Rissman, was the highest offer received by the trustees, and also reciting the receipt in open court of a bid of $285,000, submitted by Peter Finder, appellant here. The decree further found that the original offer submitted by Yampolsky, in the amount of $252,500, contained a provision according him' the privilege of meeting any higher bids. Accordingly, it was adjudged that, in the event Yampolsky met Finder's bid within five days, the directors and trustees, upon obtaining consents of the owners of 66⅔ per cent of the outstanding certificates representing shares of preferred stock, be authorized to take all steps necessary to consummate the sale to Yampolsky. August 6, 1943, within the prescribed five days, Yampolsky filed his memo-

randum of election to meet Finder's high bid of $285,000. No appeal was taken from the order or decree of August 4, 1943, or from either of the earlier orders or decrees.

September 24, 1943, Finder was granted leave to intervene in the proceedings. The gist of his intervening petition is that he was the successful bidder and that the action of the court in extending to Yampolsky the "option" of increasing his bid to meet petitioner's bid was a nullity. Answers filed by plaintiffs, defendants and Yampolsky to the intervening petition asserted the validity of the .option and Yampolsky's consequent right to a consummation of his contract to purchase the property. October 18, 1943, after a hearing, the chancellor entered a decree dismissing the intervening petition for the want of equity. This direct appeal followed.

A freehold is involved where either the necessary result of the judgment or decree is that one party gains and the other loses a freehold estate, or where the title to a freehold is so put in issue by the pleadings that the determination of the case necessarily involves a decision with respect to the ownership of the real estate in controversy. (*Williams* v. *Williams,* 381 Ill. 507; *Swinson* v. *Sodaman,* 369 Ill. 442.) Here, the principal issue made by the intervening petition and answers thereto concerns the validity of the acceptance of Yampolsky's bid pursuant to an option contained in the contract previously executed by him. Granting the relief sought would not result in either Yampolsky or Finder gaining or losing a freehold, but would merely afford Finder, the intervening petitioner, the right to fulfill his bid previously made in open court. On the other hand, an affirmance of the decree of October 18, 1943, would not necessarily result in Yampolsky gaining a freehold. The word "freehold" does not include the mere right to do that which in equity will entitle the party to a freehold. *Carlson* v. *Chicago Title and Trust Co.* 375 Ill. 125.

*Bondurant* v. *Bondurant,* 251 Ill. 324, cited by intervening petitioner in an attempt to justify an appeal directly to this court, is inapplicable. There, a judicial sale was involved, and the premises were struck off and sold to the purchasers, George R. Trenchard and Louis C. Burgess, and the question determined by the trial court was whether the sale should be approved and the purchasers invested with title to the land, such approval·giving to Trenchard and Burgess the right to a conveyance, and the disapproval, conversely, preventing them from obtaining the title. The situation here is not parallel, the proposed sale being by the corporation, acting merely under the supervision. of the chancellor. A freehold is, hence, not involved.

The cause, together with plaintiffs' motion to dismiss the appeal, taken with the case, is transferred to the Appellate Court for the First District.

*Cause transferred.*