Arthur Ronald Lambert Field Tree, as Co-trustee Under Last Will and Testament and Codicils Thereto of Lambert Tree, Deceased, Plaintiff-Appellee, v. Continental Illinois National Bank and Trust Company of Chicago, as Co-trustee Under Last Will and Testament and Codicils Thereto of Lambert Tree, Deceased, Defendant-Appellant.

Isabel Rives et al., Defendants-Appellees.

Gen. No. 45,556.

Opinion filed March 19, 1952. Rehearing denied and petition on rehearing filed April 25, 1952. Released for publication April 25, 1952.

WILSON & MCILVAINE, and MAYER, MEYER, AUSTRIAN & PLATT, all of Chicago, for appellant; CALVIN F. SELFRIDGE, and SHERWOOD K. PLATT, both of Chicago, of counsel.

EDWARD B. HAYES, LORD BISSELL & KADYK, ROY H. BARR, REUBEN E. SWANSON, CHARLES H. STEPHENS, JR., of Cincinnati, and ARTHUR CROWNOVER, JR., of Nashville, for certain appellees; EDWARD B. HAYES, ROBERT P. COLE, and ROY R. BARR, all of Chicago, of counsel; CLARENCE J. BASSLER, of Chicago, for certain other appellee, DANIEL J. LAMONT, of Chicago, Guardian *ad litem* for certain appellee, *pro se;* DANIEL J. LAMONT,

and JOHN J. KENNELLY, both of Chicago, of counsel; VERNON R. LOUCKS, of Chicago, for certain appellee; CHARLES O. LOUCKS, and JAMES L. HENRY, both of Chicago, of counsel.

MR. JUSTICE FEINBERG delivered the opinion of the court.

Defendant Continental Illinois National Bank and Trust Company of Chicago, as co-trustee under the last will and testament of Lambert Tree, deceased, hereinafter referred to as the bank, appeals from a decree in this action by Arthur Ronald Tree, hereinafter referred to as Ronald, as a co-trustee under the same will, seeking directions from the court concerning the right and duty of either of the trustees to appeal from a decree entered in another action brought by plaintiff as co-trustee for the construction of said last will.

Plaintiff, as co-trustee, brought three separate actions involving the will in question. The first was in the circuit court of Cook county to construe the will and to declare the provisions of the will creating the trust estate invalid, upon the theory that they violate the rule against perpetuities. Upon a hearing a decree was entered finding that the trust provisions of the will did not violate the rule. Plaintiff's appeal from that decree is now pending in this court. After the entry of said decree plaintiff instituted a second action to construe the will and to direct the trustees to award plaintiff, as one of the beneficiaries of the trust, out of the corpus of the trust, such amount. as may be found necessary for the maintenance of the plaintiff. A decree was entered awarding plaintiff $600,000 out of the corpus of the trust. The bank's appeal from that decree is presently pending in this court. Plaintiff then brought the instant action. All the parties in interest were made defendants, including the guardian *ad litem* of Penelope Tree, a minor, the child of plaintiff.

When the instant action was pending in the superior court, plaintiff presented a petition for the approval of a family settlement agreement. The minor was not a party to this agreement. Answers were filed to the petition, and upon a hearing the court aproved this agreement, the pertinent terms of which will be presently stated. From this decree the bank appeals. The decree directed the guardian *ad litem* not to appeal, but a brief has been filed here by the guardian *ad litem*.

The testator died October 9, 1910, and his will was admitted to probate in the probate court of Cook county on December 31, 1910. He left surviving him his only child, Arthur M. Tree, and one grandchild, Ronald, they being his only issue. Arthur M. Tree, father of plaintiff, died September 26, 1914, leaving Ronald his only issue. Ronald is now 52 years of age, and his life expectancy is shown to be 19.91 years. Ronald has three children, Michael, age 28; Arthur, age 24; and Penelope, born December 3, 1949. He has no other children or grandchildren, and Ronald and the three children are the only issue of the testator and the only issue of Arthur.

The pertinent provisions of the will, which are the basis of the respective contentions of the parties, are found in paragraph 20 of the will. It creates a spendthrift trust for Arthur and Ronald, and directs the payment of the net income to Arthur until Ronald arrives at the age of 30 years, in which event, if Ronald is at the time ''a man of temperate habits and good moral character,'' then and thereafter to pay to Ronald one-quarter and to Arthur three-quarters of the net income of said trust estate. Upon the death of Arthur, the net income is to be paid to Ronald and any other child or children born in lawful wedlock of Arthur, and survivors of them, during the continuance of the trust, in equal shares. In the event of the death of any of Arthur's children born in lawful wedlock, during the continuance of the trust, leaving issue sur-

viving, such issue shall receive the same share of the income which deceased child would have been entitled to receive if living.

As to the termination of the trust, the will provides:

"The trust hereby created shall continue until the death of my son Arthur and of the children of my said son Arthur born in lawful wedlock; provided, however, that *in any event* the trust hereby created shall cease and determine at the expiration of twenty-one (21) years after the death of the last survivor of my said son and his children born in lawful wedlock prior to my decease." (Italics ours.)

The will further provided:

"Upon the termination of the trust hereby created one-half of the trust estate then remaining in the hands of my said trustees shall go to and be distributed between the lawful issue of my said son Arthur *per stirpes,* in the same shares and interests in which they would inherit property owned by him if he had died intestate under the laws of the State of Illinois; and in the event that no lawful issue of my said son Arthur, born in lawful wedlock, shall then survive, then one equal half of the said trust estate shall go to my heirs at law. The other equal one-half of said trust estate I give and bequeath to St. Luke's hospital of the City of Chicago . . . ."

The will further provides:

"Neither my said son Arthur, nor either of his children, or any of their issue, shall have power to anticipate, assign, transfer or otherwise dispose of the whole or any part of the income payable to him or them, or either of them, under the terms and provisions of this

article of my will, it being my intention hereby to provide for the comfortable support and maintenance of my said son and his children, and their issue, during the life of the trust hereby created, in the manner and to the extent hereinbefore provided, *and which shall not be liable to be diverted from the purposes aforesaid, either by the act of the parties or by process of law.*" (Italics ours.)

The "family settlement" agreement recites that the parties to the agreement are the only persons who have any equitable or legal interest under the will, except St. Luke's Hospital, whose interest is in no way affected by the settlement agreement; that Penelope, the minor child, who, though not a party to the agreement, is a party to the proceeding by her guardian *ad litem;* that originally plaintiff filed his complaint in the circuit court of Cook county to have the trust declared void because it violates the rule against perpetuities; that a decree was entered in said cause, dismissing the complaint for want of equity, from which plaintiff appealed; that subsequently another action was filed by plaintiff for the construction of said will, in which action a decree was entered construing the will and awarding $600,000 to Ronald out of the corpus of said estate; that an appeal was taken to the Appellate Court by the co-trustee bank; that subsequently another action (the instant action) was filed, asking for instructions as to the right and the duty of either trustee to appeal from said decree; that "all parties to this agreement are of the opinion that the legal questions involved in all said proceedings are not free from doubt, and if not settled by agreement of the parties would require long, expensive, uncertain and bitter litigation"; that "the parties equitably interested herein are blood relatives, and the relations of all of the parties to this agreement have at all times been most friendly, cordial and pleasant, and all parties hereto

desire to preserve such relationship, and to avoid the antagonism and enmity which litigation might cause. All parties hereto recognize the desirability of avoiding the drastic and disastrous results which would accrue to any of the parties hereto, if their contentions in said litigation ultimately were to be resolved completely against them; and each party hereto is anxious to preserve to itself or himself the certainty of the interest reserved to him or them under this settlement agreement, rather than to risk the entire destruction of his or their rights''; that all of the parties have been desirous of securing from competent, experienced and disinterested counsel, impartial judgment and advice as to (1) whether the legal issues involved are such as to justify a reasonable difference of legal opinion, and (2) if so, what settlement would be a reasonable and fair measure of the legal rights of the parties; that counsel for the parties, together with special counsel employed for the purpose of rendering an opinion upon the respective legal contentions of the parties to the agreement, met and concluded that the settlement agreement was advisable, proper and reasonable.

The settlement agreement directed the trustees to turn over to Ronald $535,000 in cash and certain real estate appraised at $65,000, or a total of $600,000. In the settlement Ronald and all of the other parties to the agreement waived all further rights to contest the validity of the will or the trust created. Ronald waived all further rights to the corpus of the estate but did not waive his right to the income, as provided in said trust, and waived all further right to the decree in the second action brought, which awarded Ronald $600,000 out of the corpus of the estate. At the termination of the trust, the $600,000 to be paid to Ronald in the settlement agreement was to be charged to that one-half of the trust funds then distributable to the issue of Arthur Tree or the heirs at law of the testator.

Other provisions of the settlement agreement need not be considered in the discussion of the questions presented.

The bank's contentions may be summarized as follows: (1) that the will is free from doubt or uncertainty, and there is no basis for the contention that the trust provision violates the rule of perpetuities; (2) that a family settlement agreement cannot be employed in the instant case to overturn the clear intent of the testator in the creation of the spendthrift trust; (3) that Ronald, the co-trustee, cannot, by bringing the three separate actions referred to and by the employment of special counsel to render an opinion, create a substantial doubt as to the validity of the trust provisions, and thereby furnish the basis for a family settlement from which he is to personally obtain substantial benefit, and thus seek to overturn the will and intention of the testator therein expressed; and (4) that the trial court was without jurisdiction of the subject matter because of the pendency of the appeal in this court from the decree in the second action construing the will, awarding Ronald $600,000 from the corpus of the estate.

Plaintiff's contentions are: (1) that the bank has no right as co-trustee to appeal; (2) that the trust provisions violate the rule against perpetuities, or at least there is a substantial basis for doubt as to their validity, which justifies the family settlement agreement; (3) that the trial court was not without jurisdiction of the subject matter nor was the instant proceeding any interference with the jurisdiction of this court in the appeal from the decree in the second action referred to; and (4) that the trial court had the power to approve the settlement agreement on behalf of the minor and persons not in being.

 At the outset, we sustain the right of the bank to appeal from the instant decree, even as against the

517

protest of the co-trustee, the plaintiff in this case. Plaintiff relies upon *Wolf v. Uhlemann*, 325 Ill. 165, in support of his contention that the bank has no right to appeal. *Altemeier v. Harris*, 335 Ill. App. 130, affirmed 403 Ill. 345, discussed the holding in the *Wolf* case against the right of the trustee to appeal and said (p. 139):

"In the instant case the trustees were required to answer the petition which sought a confirmation of the Family Settlement Agreement. They did so and when, upon a hearing, a decree was rendered adversely to their contentions and which, in their opinion, thwarted the will of the creator of the trust which they were required to administer, it was not only their right, but clearly their duty to appeal."

To the same effect are *Stein v. La Salle Nat. Bank*, 328 Ill. App. 3, and *Glaser v. Chicago Title & Trust Co.*, 333 Ill. App. 550, affirmed 401 Ill. 387.

██ We do not agree with the bank's contention that the trial court had no jurisdiction of the subject matter because of the pendency of the appeal in this court in the second action, to which we have already referred. During the pendency of the appeal in the second case, when the parties reached a settlement which they term "family settlement" agreement, obviously there must be some court to which they should be permitted to apply for the confirmation of said agreement, and if sustained, it would end the litigation in the first two actions brought by plaintiff and pending on separate appeals in this court. The perfection of the appeals to this court in the first and second actions stripped the trial court of any further jurisdiction over the subject matter of those suits. Whether such a proposed family settlement agreement is reasonable and proper might require proof to estab-

lish it and is something this court would have no right to hear and determine, its jurisdiction being only appellate. Hence, we think it proper equity practice, under such circumstances as these, for plaintiff to have made application to the chancellor in the instant action for confirmation of the agreement.

■ Tested by the elements necessary to constitute a spendthrift trust, as declared in *Altemeier v. Harris, supra,* and *Stein v. La Salle Nat. Bank, supra,* the instant will clearly creates a spendthrift trust for the benefit of Arthur and Ronald and limits their interests to the net income of the trust. There is not even the usual provision found in such wills that the trustees, in their discretion, may resort to the corpus of the trust in the event they find the net income insufficient to maintain the beneficiaries of the spendthrift trust. The language employed in the instant will expresses the clearest intention on the part of the testator that neither Arthur nor Ronald should have or enjoy, during his lifetime, more than the net income of the trust estate. The usual provisions against diversion by the act of the parties or operation of law and the restriction against assignment of their interests are typical of a spendthrift trust.

■ We come next to the consideration of the question whether the doctrine of the "family settlement" agreement can apply in the instant case. Plaintiff recognizes that in order to sustain this settlement agreement, it must be made to appear that there is a "substantial basis for doubt" as to the validity of the trust provisions. *Wolf v. Uhlemann, supra; Altemeier v. Harris, supra.* Plaintiff relies mainly upon *Corwin v. Rheims,* 390 Ill. 205, as creating such a substantial doubt. The *Corwin* case can be distinguished factually from the instant case, as it was distinguished in *Chicago Title & Trust Co. v. Shellaberger,* 399 Ill. 320, 340.

██ If the trust provisions in the instant will violate the rule of perpetuities, or if there is substantial doubt as to its validity, then there is merit in plaintiff's position that the instant family settlement agreement, which the law favors (*Stipanowich v. Sleeth*, 349 Ill. 98; *Wolf v. Uhlemann, supra*), should be confirmed. On the other hand, if there is no such substantial doubt as to its validity, then the same objection applies, as stated by the Appellate Court in *Altemeier v. Harris, supra* (p. 154), and affirmed by the Supreme Court:

"If the Family Settlement Agreement here is approved and validated, the effect would be that the members of the Stover family would be privileged to alter the terms and provisions of their ancestor's will merely for their own convenience and in order to secure greater individual financial advantages than those provided in the will and intended by the testator."

██ At the time of the making of the will in question Arthur and Ronald were in being. Arthur was the only son of the testator and Ronald his only grandson. The will provides that the trust shall continue until the death of Arthur and children of Arthur born in lawful wedlock, and that the trust in any event shall cease and determine at the expiration of twenty-one years after the death of the last survivor of Arthur and his children born in lawful wedlock "prior to my decease." Upon termination the trust is to be distributed one-half to the lawful issue of Arthur *per stirpes*, and in the event no lawful issue of Arthur born in lawful wedlock shall survive, then one equal half of the trust is to go to the heirs at law of the testator and the other half of the trust estate is to go to St. Luke's Hospital.

██ We can see no room for difference of opinion that these provisions of the will satisfy the rule against perpetuities. It is clear from the language

of the will that Arthur and Ronald were in being when the trust was created, and it terminates twenty-one years after the death of both. Such period of termination certainly does not violate the rule of perpetuities. *Chicago Title & Trust Co. v. Shellaberger,* 399 Ill. 320, 333. The provision for distribution upon the death of both is equally clear. It goes to the lawful issue of Arthur, who in this case would be the children of Ronald. They are in the law regarded as the lawful issue of Arthur. *Miller v. Wick,* 311 Ill. 269, 275, held that the meaning of the word "issue" is " 'to proceed out of;' offspring of a common ancestor; and includes not only a child but descendants of a child."

We have given close study to the cases relied upon by plaintiff, including the late case of *Wolf v. Uhlemann, supra,* in which the court reached its conclusion largely by reason of the extremely doubtful meaning of the will, and so stated by the Supreme Court in the *Altemeier* case in its review of *Wolf v. Uhlemann.* The language in the instant will is clearer and less ambiguous than the language of the will in the *Altemeier* case, where the court held that it did not violate the rule of perpetuities. In our considered judgment, we think there is no valid basis for the claim that there is any substantial doubt as to the validity of the provisions of the trust. We think the instant will clearly does not violate the rule of perpetuities.

█ It follows from what we have said that to confirm the instant family settlement agreement would result in abrogating the spendthrift provisions of the trust and would violate the rule stated by the Supreme Court in the *Altemeier* case, wherein it said (p. 355):

" . . . the object and purpose of a trust created by a will cannot be varied or terminated unless the purpose of the trust is accomplished, nor can such a trust

521

be terminated by unanimous consent where it contains spendthrift provisions or where contingent interests cannot be definitely ascertained.''

For the foregoing reasons the decree of the superior court is reversed.

*Reversed.*

KILEY, P. J. and LEWE, J., concur.

ADDITIONAL OPINION ON PETITION FOR REHEARING

██ Plaintiff for the first time in his petition for rehearing contends that there is a freehold involved in the instant case and that therefore this court has no jurisdiction of the subject matter. The record discloses plaintiff did not, either at the time the bond for appeal to this court was presented to the chancellor for approval, or in his brief on appeal, or by any motion to transfer the case to the Supreme Court, or in oral argument, make any suggestion that there was a freehold involved and that the appeal should be directly to the Supreme Court. We are fully aware that if a freehold is involved, then this court has no jurisdiction of this appeal. *Rossiter v. Soper,* 384 Ill. 47.

██ The Supreme Court has repeatedly held that in order for a freehold to be involved it must appear from the record:

(1) that the title to real estate was put in issue by the pleadings and on appeal by assignment of error touching the freehold (*Leverich v. Roy,* 402 Ill. 71, 73);

(2) that a freehold is directly and not collaterally, contingently and incidentally involved (*Murray v. Sheridan,* 411 Ill. 65, 67); and

(3) that the necessary result of the judgment or decree is that one party gains and the other party loses a freehold estate, and the title to the freehold is so put in issue by the pleadings that the decision of the case necessarily involves a decision of such issue (*Campo v.*

522

*Grunewald,* 391 Ill. 91, 94; *Kramer v. Ginger,* 405 Ill. 17, 20; *Peters v. Peters,* 405 Ill. 507; *Nelson v. McCabe Development Co.,* 408 Ill. 263).

In *Dombroski v. Vallely,* 409 Ill. 596, 599, the court said:

"If a freehold is involved in the original judgment or decree, but not in the point assigned for error, the appeal should be taken to the Appellate Court."

 Is a freehold involved in the instant case? The original complaint filed by plaintiff as co-trustee sought instruction and direction from the court as to the right and duty of the plaintiff or his co-trustee, the bank, to take an appeal from the decree entered in the second action brought by plaintiff, referred to in the main opinion. All of the defendants except the bank filed an answer to the complaint. The bank filed its written motion with reasons assigned to dismiss the complaint. Pending the motion to dismiss plaintiff filed his petition for the approval of the "family settlement agreement," to which answers were filed by all of the defendants. Neither by the complaint nor the answers of any of the defendants, nor by the motion of the bank to dismiss the complaint, was the title to a freehold estate put in issue, in any way questioned, or suggested. No assignment of error on this apeal or the opposing brief of plaintiff raised any question as to a freehold.

The decree which approved the settlement directed the payment of $535,000 in cash out of the corpus of the estate and a conveyance of a piece of real estate valued at $65,000. The decree was not upon the issue raised by the complaint and the answers thereto but confined solely to the petition for the approval of the "family settlement agreement." It is clear to us that under these circumstances and upon this record a freehold was only indirectly, collaterally, contingently and incidentally involved. *Murray v. Sheridan, supra.*

■ There was no contest in the proceeding over any freehold. Where the freehold in question is disposed of by agreement of the parties interested in the freehold, it can hardly be considered an adversary proceeding in which one party gains and the other party loses a freehold estate, as contemplated by the holding of the Supreme Court in *Campo v. Grunewald, Kramer v. Ginger, Peters v. Peters, supra,* and the other cases noted.

In *Campo v. Grunewald, supra,* the court said:

"We have many times held that in order to give this court jurisdiction a necessary result of our decision must be the loss by one party and a gain by the other of a freehold, or the title to a freehold must be so put in issue, by the pleadings, that the determination of the case necessarily involves a decision with respect to the ownership of the real estate in question. (*Williams v. Williams,* 381 Ill. 507; *Swinson v. Sodaman,* '369 Ill. 442; *Neill v. Kimball,* 387 Ill. 58.) It is to be noted that it must be a necessary result that a freehold is lost or gained. This means any decision rendered must so result."

We therefore conclude that no freehold is involved upon this appeal. The petition for rehearing is denied.

KILEY, P. J. and LEWE, J., concur.