JOHN F. SMITH *et al.* Trustees, Appellees, *vs.* MAY S. THOMAS *et al.* Appellants.

*Opinion filed April 24, 1925—Rehearing denied June 3, 1925.*

1. WILLS—*when rule in Shelley's case does not apply to devise in trust.* Where the testator devises all his property to trustees, to keep and use the income for the benefit of his wife and two children until twenty-one years after the death of the survivor, then to divide the property and accumulations "between the heirs" of said children, the word "heirs" is used as a word of purchase describing the persons who are to take the estate at the termination of the trust, and the rule in *Shelley's case* does not apply, as there is no freehold in the testator's children.

2. SAME—*the rule in Shelley's case does not apply to remainder limited to children.* Where the estate in remainder is limited to the children or grandchildren of the ancestor the rule in *Shelley's case* does not apply.

3. SAME—*when the act of 1907, limiting period of accumulation, does not apply.* The act of 1907, limiting the period during which the income from estates may be accumulated, does not apply to a will made and published before the act went into effect on July 1.

4. SAME—*what must be considered in ascertaining intention.* The testator's intention must be ascertained by reading the will in the light of the testator's surroundings and in view of what he must have had in mind at the time of expressing his testamentary wishes.

5. SAME—*general rule as to when adopted child is included in a devise to children.* Where provision is made in a will for the children of some person other than the testator, an adopted child is not included unless there is language in the will or circumstances surrounding the testator at the time he made the will which make it clear that the adopted child was intended to be included.

6. SAME—*when an adopted child is not included in a devise to "heirs."* An adopted child must be held not to have been included in a devise to the "heirs" of the testator's children upon the termination of a trust for the benefit of said children and the testator's wife, where the child was not born when the will was made and was not adopted until nearly five years after the testator's death.

7. STATUTES—*when a statute takes effect.* An act becomes a law as soon as it is signed by the Governor, but it does not become effective until the first day of July following its passage un-

less said day arrives before the approval of the act, in which case it becomes effective when approved.

8. PARENT AND CHILD—*adoption of child does not create relation of grandchild also.* The adoption of a child does not make the adopted child the grandchild of the parents of the adopting parent.

HEARD, J., took no part.

APPEAL from the Circuit Court of Stephenson county; the Hon. HARRY EDWARDS, Judge, presiding.

FISHER, NORTH, LINSCOTT & GIBBONEY, HALL, BAKER & HALL, CHARLES H. GREEN, and ROBERT B. MITCHELL, for appellants.

OSCAR R. ZIPF, for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

May 7, 1906, Daniel C. Stover, of the city of Freeport, made and published his will, consisting of twelve paragraphs, by which he disposed of an estate of the value of $600,000. The accumulations, twenty per cent of which are derived from real estate and eighty per cent from personal property, amount to about $35,000 a year. The estate has trebled in value since the death of the testator. After he had executed his will his wife died and he added a codicil June 19, 1907. The testator died January 17, 1908, leaving him surviving May Winger Thomas and Porter S. Stover, his children. The daughter has two children, Clare Harris and Stover Winger, both of whom are married and have children. The son has two children, Gladys Lyon and Margaret Stover, the former of whom has one son. All of testator's grandchildren were born before he drafted his will. Porter has an adopted son, Raymond, who was born September 28, 1906, and was adopted October 19, 1912. A dispute having arisen with respect to the construction to be given certain provisions of the will, a bill was filed in

the circuit court of Stephenson county by the trustees against the children, grandchildren and great-grandchildren of the testator and the adopted son of Porter Stover. The following are the pertinent provisions of the will:

"4. All the rest, residue and remainder of my property and estate, real, personal and mixed, of every name, nature and description, I give, devise and bequeath to my executors and trustees hereinafter named, and to their successors as hereinafter provided, in trust, to keep the same together and manage the same and to accumulate the income thereof as far as possible consistently with the provisions of this will, for and during the lives of my wife, Mary C. Stover, my daughter, May S. Winger, and my son, Porter S. Stover, and the life of the survivor or survivors of them, and for and during the term of twenty-one years after the death of the last survivor of them, and then to divide the same and the accumulations thereof, between the heirs of my daughter, May S. Winger, and the heirs of my son, Porter S. Stover, equally, except that in such division they shall equalize as between said heirs the sums which shall have been charged against said May S. Winger and said Porter S. Stover, under the terms of this will, so that the heirs of either shall receive the benefit of the economy of their parents. In such division, children shall represent their parents *per stirpes.* * * *

"My said executors and trustees shall also pay over to my daughter, May S. Winger, and my son, Porter S. Stover, for living expenses, the sum of twenty-five hundred dollars *per annum,* each, payable quarterly, provided that my said executors and trustees may, in their discretion, in cases of emergencies, occasionally increase such amount to either or both of my said children to an amount not exceeding in any one year to either of them, one-third of the net annual income from my personal estate, or after the death of their mother, Mary C. Stover, not exceeding one-half the net annual income from my personal estate. The sums

so paid by my said executors and trustees to my said children shall be charged against the respective shares in the final distribution of my estate represented by my said children, so that the heirs of each of them shall reap the benefit of any economies practiced by their parents. In case of the death of either or both of said children, my said executors and trustees are authorized to pay not exceeding the sum of twelve hundred and fifty dollars to or for the support of the children of my said child, to be distributed as in the judgment of my executors and trustees may be advisable, and a like sum of twelve hundred and fifty dollars to each surviving husband or wife of my said children as long as they may remain unmarried, but in case they or either of them shall marry again, then the payment of said sum of twelve hundred and fifty dollars to the one or ones so remarrying shall cease.

"5. My said executors and trustees shall also pay to or for the use of each grandchild of mine between the ages of twelve and twenty-five years, a sum not exceeding one thousand dollars annually, to be applied exclusively to their education and to be charged against the shares in my estate represented by their respective parents. And as to each such grandchild, should the full sum of one thousand dollars not be required for educational purposes in any one year or years, the surplus or any requisite part thereof may be called for at a later year or years, without interest, if needed for educational purposes, or if not so needed shall remain a part of my estate to the credit of the respective shares thereof represented by their respective parents.

"6. It is my will that no beneficiary hereunder be allowed to acquire any right or title to the whole or any part of his legacy or annuity hereunder except through the regular payment by my said executors and trustees, for which he or she or his or her guardian shall give a receipt, nor shall any beneficiary hereunder have any right or power to draw upon, assign or otherwise to anticipate or to mort-

gage or otherwise encumber in advance any installment or installments of income or principal; nor to give orders in advance upon the trustee or trustees for any installment or installments of income, nor shall the same in any way become liable at law for any of the indebtedness of any one of said beneficiaries, nor shall said executors and trustees be liable as garnishees of such beneficiary or beneficiaries in any court of law, nor shall such beneficiaries or either or any of them acquire any interest in my said estate or in any sum or sums of money coming from my said estate until the same shall be actually paid over by my said executors and trustees to such beneficiary or beneficiaries. * * *

"8. * * * And I hereby give to my said executors and trustees and their successors in trust so appointed, full power to sell any and all my real and personal property, in their discretion, and to execute any and all necessary or convenient deed or deeds of conveyance or assignment of my said property or any part or parts thereof, which said deed or deeds of conveyance or assignment when so executed by my said executors and trustees or their said successors, shall be as good and effectual to pass the title to the property therein described and conveyed as if the same had been executed by me in my lifetime. * * *

"11. It is my desire that my said executors and trustees, as they receive money from the sale of real estate or from other sources, which is not needed for the payment of legacies or the expenses of administration, shall invest the same and keep it invested in good, safe income producing securities, farm loans being preferred under present conditions, but in this respect, as in others, my trustees are to use their best judgment, keeping in view that my desire is to create and preserve for my grandchildren and their heirs an estate having a steady permanent income."

The children of the testator contended in the circuit court, and as appellants in this court contend, that under the rule in *Shelley's case* they are the owners in fee of all

the real estate of which the testator died seized. All of the appellants contend that the act of 1907 limiting the period during which income is permitted to accumulate applies to this estate and that all the income must be distributed after January 17, 1929. Raymond Stover contends that as the adopted child of Porter Stover he is entitled to participate in the distribution of the estate and the income therefrom in the same manner as the other children of his father. The chancellor denied all these contentions and entered a decree accordingly. This appeal followed.

A reading of the will indicates clearly that the testator did not intend for his children to have any interest in the *corpus* of his estate and that the only interest they should ever have was the right to receive an annuity of $2500 per annum and in certain events an additional allowance, which under no circumstances was to exceed in the case of either of them one-half the net annual income from his personal estate. They do not receive under the will a life estate or any other freehold interest in the real estate of the testator. It is also clear that the *corpus* of the estate and the accumulations are to go eventually to the children of May Winger Thomas and the children of Porter Stover or their descendants. The word "heirs," as used in the fourth paragraph of the will, is not a word of limitation describing those who are to take from generation to generation, but is a word of purchase describing the persons who are to take the estate at the termination of the trust. Where, as in this case, it is clear that the testator did not use the word "heirs" in its strict legal sense but did use it to describe children or grandchildren, it will be given the meaning necessary to carry out the testator's intention. (*Winchell* v. *Winchell,* 259 Ill. 471.) Where the estate in remainder is limited to the children or grandchildren of the ancestor the rule in *Shelley's case* does not apply. (*Peacock* v. *McCluskey,* 296 Ill. 87; *Butler* v. *Huestis,* 68 id. 594; 1 Tiffany Real Property,—2d ed.—sec. 151.) There being neither a freehold

in testator's children nor a remainder to their heirs generally, the claim of testator's children that they take a fee under the rule is without merit. (Kales Estates,—2d ed.— sec. 413.)

The act of 1907, limiting the period during which the income from estates may be accumulated, provides: "That no person or persons shall, after this act goes into effect, by any deed or deeds, will, codicil or otherwise howsoever executed after this act goes into effect, settle or dispose of any real or personal property, so and in such manner, either expressly or by implication, that the rents, issues, profits or produce thereof shall be wholly or partially accumulated; for any longer term than the life or lives of any such grantor or grantors, settlor or settlors, or for any longer than the term of twenty-one years from the death of any such grantor, settlor, devisor or testator; or for any longer than during the minority or respective minorities of any person or persons who shall be living, or in *ventre sa mere* at the time of the death of such grantor, devisor or testator, or for any longer than during the minority or respective minorities only of any person or persons who, under the uses or trusts of the deed, will or other assurances directing such accumulations, would, for the time being, if of full age, be entitled unto the rents, issues and profits, or the interest, dividends or annual produce so directed to be accumulated." (Laws of 1907, p. 1.)

The salt and pepper punctuation of this act obscures its meaning so that it is difficult to determine with certainty the intention of the legislature. The act is substantially a copy of 39 and 40 George III, chap. 98, which has been in effect in England since 1800. The English act specifically provided that it should not apply to wills executed before the passing of the act, except in cases where the testator lived and remained of sound and disposing mind for a period of twelve months after the passage of the act. It did apply to all other wills probated after it took effect not-

withstanding the will was executed before the passage of the act. Our act contains the clause, "executed after this act goes into effect," which does not appear in the English act. It is clear that our act does not apply to a will made and published before the act went into effect. The question presented, therefore, is whether the act of 1907 was in effect when the will in question was executed. The will was made May 7, 1906, and the codicil was added June 19, 1907. The act under consideration was approved May 24, 1907, and became effective July 1 following. An act becomes a law as soon as it is signed by the Governor, but it does not become effective until the first day of July following its passage. (*People* v. *Inglis,* 161 Ill. 256.) Until an act becomes operative as a law persons are not compelled to govern their actions by it. (*Dunne* v. *County of Rock Island,* 283 Ill. 628.) When the Governor has approved an act and the first day of July following its passage has arrived it becomes an effective law. (*Board of Education* v. *Morgan,* 316 Ill. 143.) The statute limiting accumulations did not go into effect until July 1, 1907, and since it applies only to wills "executed after this act goes into effect" it does not apply to the will in question.

The next question presented is whether Raymond Stover is entitled to the benefits conferred by the will upon the daughters of Porter Stover. Raymond's rights of inheritance are not material because he is claiming nothing as an inheritance. His claim is based solely on the will. The question presented, therefore, is, Can he be identified as a beneficiary named in the will? The testator directs the trustees to pay the annuities provided and then to divide his estate and the accumulations thereof between the children of his daughter and the children of his son. Did he intend to include in the word "heirs," which we have held to mean "children," a child adopted by his son or daughter? This is purely a question of the testator's intention, and this must be ascertained by reading the will in the light

of the testator's surroundings and in view of what he must have had in mind at the time of expressing his testamentary wishes. (*Munie* v. *Gruenewald,* 289 Ill. 468; *Wallace* v. *Noland,* 246 id. 535; *Lichter* v. *Thiers,* 139 Wis. 481, 121 N. W. 153; *In re Truman,* 27 R. I. 209, 61 Atl. 598.) When provision is made in a will for the child of some person other than the testator, an adopted child is not included unless there is language in the will or circumstances surrounding the testator at the time he made the will which make it clear that the adopted child was intended to be included. (*In re Woodcock,* 103 Me. 214, 68 Atl. 821; *In re Leask,* 197 N. Y. 193, 90 N. E. 652; *Blodgett* v. *Stowell,* 189 Mass. 142, 75 N. E. 138; *Eureka Life Ins. Co.* v. *Geis,* 121 Md. 196, 88 Atl. 158.) The testator makes provision for the education of "each grandchild of mine," and admonishes the trustees named by him to keep "in view that my desire is to create and preserve for my grandchildren and their heirs an estate having a steady permanent income." While Raymond became the child and heir of Porter Stover when he was adopted he did not become the grandchild of the testator. Raymond was not born until September 28, 1906, and manifestly the testator could not have had him in mind when he drafted his will, nearly four months before. He did not become the adopted son of Porter until October, 1912, nearly five years after the death of the testator and more than six years after he executed his will.

The chancellor correctly decided the three questions presented, and the decree of the circuit court is therefore affirmed.                    *Decree affirmed.*

Mr. Justice Heard took no part in this decision.