Ethel S. Altemeier et al., Successor Trustees under the Last Will and Testament of Daniel C. Stover, Deceased, Appellants, v. Clare Winger Harris et al., Appellees.

Gen. No. 10,185.

Opinion
filed June 4, 1948.  Opinion modified and rehearing denied August 25, 1948.
Released for publication August 27, 1948.

FRANKLIN J. STRANSKY, of Chicago, for appellants.

EVERETT E. LAUGHLIN, of Freeport, trustee for the unborn.

ECKERT & ECKERT, of Freeport, CHAS. O. RUNDALL and HORACE A. YOUNG, both of Chicago, for adult appellees; ROBERT P. ECKERT, JR., of Freeport, and HORACE A. YOUNG, of Chicago, of counsel.

ROBERT J. SCHMELZLE, of Freeport, for minor appellees.

MR. JUSTICE DOVE delivered the opinion of the court.
On May 7, 1906, Daniel C. Stover of the city of Freeport executed his last will and testament. Following the death of his wife, he executed a codicil dated June 19, 1907. On January 17, 1908, Daniel C. Stover died leaving him surviving, May Stover Winger Thomas and Porter S. Stover, his children. The will and codicil were duly admitted to probate on February 17, 1908. In 1909, the children filed a bill in chancery to set aside the will and codicil upon the ground that their father was not of sound mind and memory at the time of the execution of the will and codicil and that the execution of these instruments was procured by fraud and undue influence. The

cause was tried, resulting in a decree sustaining the will.

The will nominated as executors and trustees John F. Smith, Henry H. Antrim and James H. Stearns and contained the following provisions:

"4. All the rest, residue and remainder of my property and estate, real, personal and mixed, of every name, nature and description, I give, devise and bequeath to my executors and trustees hereinafter named, and to their successors as hereinafter provided, in trust, to keep the same together and manage the same and to accumulate the income thereof as far as possible consistently with the provisions of this will, for and during the lives of my wife, Mary C. Stover, my daughter, May S. Winger, and my son, Porter S. Stover, and the life of the survivor or survivors of them, and for and during the term of twenty-one years after the death of the last survivor of them, and then to divide the same and the accumulations thereof, between the heirs of my daughter, May S. Winger, and the heirs of my son, Porter S. Stover, equally, except that in such division they shall equalize as between said heirs the sums which shall have been charged against said May S. Winger and said Porter S. Stover, under the terms of this will, so that the heirs of either shall receive the benefit of the economy of their parents. In such division, children shall represent their parents, per stirpes. . . .

"My said executors and trustees shall also pay over to my daughter, May S. Winger and my son, Porter S. Stover, for living expenses, the sum of twenty-five hundred dollars per annum, each, payable quarterly, provided that my said executors and trustees may, in their discretion, in cases of emergencies, occasionally increase such amount to either or both of my said children to an amount not exceeding in any one year to either of them, one-third the net annual income

from my personal estate, or after the death of their mother, Mary C. Stover, not exceeding one-half the net annual income from my personal estate. The sums so paid by my said executors and trustees to my said children shall be charged against the respective shares in the final distribution of my estate represented by my said children, so that the heirs of each of them shall reap the benefit of any economies practiced by their parents. In case of the death of either or both my said children, my said executors and trustees are authorized to pay not exceeding the sum of twelve hundred and fifty dollars to or for the support of the children of my said child, to be distributed as in the judgment of my said executors 'and trustees may be advisable, and a like sum of twelve hundred and fifty dollars to each surviving husband or wife of my said children so long as they may remain unmarried, but in case they or either of them shall marry again, then the payment of said sum of twelve hundred and fifty dollars to the one or ones so remarrying shall cease.

"5. My said executors and trustees shall also pay to or for the use of each grandchild of mine between the ages of twelve and twenty-five years, a sum not exceeding one thousand dollars annually, to be applied exclusively to their education and to be charged against the shares in my estate represented by their respective parents. And as to each such grandchild, should the full sum of one thousand dollars not be required for educational purposes in any one year or years, the surplus or any requisite part thereof may. be called for at a later year or years, without interest, if needed for educational purposes, or if not so needed shall remain a part of my estate to the credit of the respective shares thereof represented by their respective parents.

"6. It is my will that no beneficiary hereunder be allowed to acquire any right or title to the whole or

any part of his legacy or annuity hereunder except through the regular payment by my said executors and trustees, for which he or she or his or her guardian shall give a receipt, nor shall any beneficiary hereunder have any right or power to draw upon, assign or otherwise to anticipate or to mortgage or otherwise encumber in advance any installment or installments of income or principal; nor to give orders in advance upon the trustee or trustees for any installment or installments of income, nor shall the same in any way become liable at law for any of the indebtedness of any one of my said beneficiaries, nor shall said executors and trustees be liable as garnishees of such beneficiary or beneficiaries in any court of law, nor shall such beneficiaries nor either or any of them acquire any interest in my said estate or in any sum or sums of money coming from my said estate until the same shall be actually paid over by my said executors and trustees to such beneficiary or beneficiaries. . . .

"8. . . . And I hereby give to my said executors and trustees and their successors in trust so appointed, full power to sell any and all my real and personal property, in their discretion, and to execute any and all necessary or convenient deed or deeds of conveyance or assignment of my said property or any part or parts thereof, which said deed or deeds of conveyance or assignment when so executed by my said executors and trustees or their said successors, shall be as good and effectual to pass the title to the property therein described and conveyed as if the same had been executed by me in my lifetime. . . .

"11. It is my desire that my said executors and trustees, as they receive money from the sale of real estate or from other sources, which is not needed for the payment of legacies or the expenses of administration, shall invest the same and keep it invested in good, safe income producing securities, farm loans being pre-

ferred under present conditions but in this respect, as in others, my trustees are to use their best judgment, keeping in view that my desire is to create and preserve for my grandchildren and their heirs an estate having a steady permanent income.''

At the time the will was executed the daughter, Mrs. Thomas, had two children and the son, Porter S. Stover, had two children and on October 19, 1912, Porter adopted a son, Raymond, who was born on September 28, 1906. A disagreement having arisen with respect to the construction to be given certain provisions of the will, the trustees in 1923, filed their bill in the circuit court of Stephenson county, making the children, grandchildren, great-grandchildren and the adopted son, Raymond Stover, defendants. It was the contention of the children of the testator that under the rule in *Shelley's* case they were the owners in fee of all the real estate of which the testator died seized. All of the defendants contended that under the act of 1907 limiting the period during which income is permitted to accumulate, that all income must be distributed after January 17, 1929. The defendant, Raymond Stover, contended that as the adopted child of Porter Stover he was entitled to participate in the distribution of the estate and income therefrom in the same manner as the other children of his father. The chancellor denied all these contentions and on January 4, 1924, entered a decree accordingly. Upon an appeal to the Supreme Court that decree was affirmed. (*Smith v. Thomas*, 317 Ill. 150.)

On February 13, 1944, May Stover Winger Thomas, daughter of Daniel C. Stover died leaving no husband her surviving but leaving as her living lineal descendants, Clare Winger Harris, daughter, Clyde W. Harris, grandson, Donald Stover Harris, grandson, Stover Carl Winger, son, Donald Lynn Harris, great-grandson, Lynn Thackeray Harris, grandson, Lynn Harris, great-granddaughter, Margaret Rose Winger

Connolly, granddaughter, Helen Louise Connolly, great-granddaughter and Daniel Christopher Connolly, great-grandson. Subsequently and on April 17, 1944, the instant complaint was filed by the then acting trustees seeking the construction of a portion of the said fourth clause of the will of Daniel C. Stover. The present counsel for the trustees state that ''at the time of the commencement of this suit said trustees either overlooked or were unaware of a previous decree of the circuit court of Stephenson county construing the same portion of clause 4 of said will.'' During the pendency of this suit and on January 18, 1946, Porter S. Stover, only son of Daniel C. Stover, deceased, died leaving him surviving, Kathryn D. Stover, his widow, and Gladys Stover Lyon, his daughter, William Parker Lyon, III, a grandson, Barbara Stover Lyon Sharpe, his great granddaughter, Margaret Stover Foster Howard, his daughter, Murray Foster Jr., a grandson, and Joan Foster, a granddaughter. All the lineal descendants of Daniel C. Stover, deceased, were made parties defendant. During the pendency of this proceeding, Donna Harris and William Parker Lyon, IV, lineal descendants, were born. A guardian *ad litem* was appointed to appear for and represent all defendants under disability and a trustee for unborn lineal descendants of Daniel C. Stover was appointed. Answers and counterclaims were filed and after the issues had been made up a hearing was had resulting in a decree which was approved by the chancellor on June 28, 1946. This decree, by stipulation of all the parties, plaintiffs and defendants, was vacated and set aside on July 12, 1946.

Thereafter the adult defendants by leave of court, filed their joint petition in this cause alleging that petitioners, together with the guardian *ad litem* appointed by the court for the infant defendants and the trustee for the unborn lineal descendants of May Stover Winger Thomas and of Porter S. Stover have

discussed and considered the issues in this suit and have agreed upon a comprehensive settlement of all matters in dispute subject to the approval of the court. A copy of the proposed Family Settlement Agreement is made a part of the petition and the petition con cluded by praying that all parties to the cause, other than petitioners, be directed to answer the petition, that a hearing then be had and a decree entered approving and confirming the Family Settlement Agreement and making it effective as to all parties to the cause. The trustee for the unborn lineal descendants of May Stover Winger Thomas and Porter S. Stover answered as did the guardian *ad litem* and also the then acting trustees, being the plaintiffs in the instant cause. A hearing was had resulting in a final decree finding that at the time the instant complaint was filed and at the time the decree was entered which was January 28, 1947, there existed a bona fide controversy as to the construction of the last will and testament of Daniel C. Stover, deceased, that the facts set forth in the Family Settlement Agreement have been fully proven, that the agreement is fair and in accordance with the law, that a number of disputes have arisen among the defendants as to their rights under the Stover will, that these disputes threaten to destroy the harmonious family relationships that have heretofore existed among the parties to this proceeding, that some of the parties have threatened further and additional litigation and litigation attacking the validity of the trust established by the Stover will, that such further and additional litigation would be protracted and would result in delay as to the administration and distribution of the property of the estate, would involve large expenditures and expenses and would result in dissention among the various parties defendant to this suit.

The decree then directed the guardian *ad litem* and the trustee for the unborn descendants to execute

said Family Settlement Agreement which the decree finds was done in open court and the adult parties having executed it, the decree approves said agreement as executed and orders that the rights of all the parties to this cause "stand and shall prevail according to the terms of the last will and testament of Daniel C. Stover, deceased, as modified by the terms of said Family Settlement Agreement" and provides that the decree and provisions of the Family Settlement Agreement shall be binding upon the trustees and their successors and shall be so carried out under the supervision and direction of the court. To reverse this decree the trustees, being the plaintiffs in the instant proceeding, appeal.

Inasmuch as the decree appealed from provides that it is and shall be binding upon appellants and their successors in trust and that all persons, firms and corporations claiming by, through or under them shall be protected from all liability for all acts done pursuant to and in reliance upon the terms and provisions of said decree or of the Family Settlement Agreement, counsel for appellees urge that it is no concern of appellants, as successor Trustees, how the parties beneficially interested settled their differences and call our attention to the language used by the court in *Wolf v. Uhlemann*, 325 Ill. 165 at page 184 where it was said: "Appellant, as trustee, did not have or claim to have any beneficial interest in the fund. The trustee's rights and interests were not affected by a decree which bound all the parties in interest and protected the trustee in the distribution of the fund. It was no concern of the trustee how the parties beneficially interested settled the threatened controversy if the trustee was protected in making the distribution. That seems to be the only question the trustee had any interest in or should be concerned about." This language was used by the court in connection with the

facts of that particular case and is not applicable to the facts disclosed by this record. The fact that family settlements are favorites of the law in nowise changes the rules of law applicable to trusts. In our opinion this is not a case for the application of any of the rules of law pertaining to family settlements. [*Wood v. Gridley,* 217 Ill. App. 579, 586.] Beneficiaries of a trust cannot revise the provisions of the instrument creating the trust to suit their own desires. [*Scheuing v. May,* 213 Ill. App. 143; *Sauvage v. Gallaway,* 335 Ill. App. 35, 41.] In the instant case the trustees were required to answer the petition which sought a confirmation of the Family Settlement Agreement. They did so and when, upon a hearing, a decree was rendered adversely to their contentions and which, in their opinion, thwarted the will of the creator of the trust which they were required to administer, it was not only their right, but clearly their duty to appeal. In *Geiger v. Bardwell,* 255 Ill. 320 at page 331 it is said: ''The trust he (the testator) attempted to create was within his legal power, and the fact that all the beneficiaries for whose protection it was created wish it destroyed does not make it any the less the duty of the trustee and the court to see that the will of the testator is carried out if he was mentally competent.'' It is apparent that the object of the trust created by the will of Daniel C. Stover has not been attained. In *Smith v. Thomas,* 317 Ill. 150 at page 155 the Supreme Court after stating that a reading of this will indicates that the testator did not intend for his children to have any interest in the corpus of his estate, went on to say that it was also clear that the corpus of the estate and the accumulations are to go eventually to the children of May Winger Thomas and the children of Porter Stover or their descendants and on page 158 states: ''The testator makes provision for the education of each 'grandchild of mine' and admonishes the trustees

named by him to keep 'in view that my desire is to cre-
ate and preserve for my grandchildren and *their heirs*
an estate having a steady permanent income.' "

The Family Settlement Agreement covers twenty
pages of the printed abstract. It recites that the trust
estate consisted of real and personal property, the
value thereof at the time of the death of Daniel C.
Stover was approximately $600,000; that it has greatly
increased in value and on December 31, 1945, the trust
had a value in excess of $2,500,000, that from Jan-
uary 1, 1939, to December 31, 1945, the average annual
net income before payment of Federal income taxes
was approximately $32,000 and of this amount $24,000
approximately, was distributed per year to May Stover
Thomas, up to the time of her death, and to Porter S.
Stover, as emergency payments in addition to annuity
payments. The agreement then sets forth the fourth
clause of the Daniel C. Stover will, the heirship, the
respective claims of the several parties interested,
adults, minors and the unborn lineal descendants of
May Stover Thomas and of Porter S. Stover and ref-
erence is then made to the case of *Smith v. Thomas,*
317 Ill. 150 and to the instant proceedings and the
agreement then concludes:

"1. All of the parties hereto hereby waive, release
and forever discharge all rights, claims and claims of
rights to receive from the Successor Trustees and
their successors in trust any annuity payment or pay-
ments under the fourth clause of the last will and testa-
ment of Daniel C. Stover, deceased.

"2. All of the parties hereto hereby waive, release
and forever discharge all rights, claims and claims of
rights to receive from the Successor Trustees and their
successors in trust any payments 'in cases of emer-
gencies,' as provided in the fourth clause of the last
will and testament of Daniel C. Stover, deceased.

"3.   In lieu of the distribution of the net income of said trust estate by the Successor Trustees, as heretofore made by means of annuity payments and of emergency payments, distributions hereafter shall be made as follows:

"(a)   The Successor Trustees and their successors in trust shall distribute equally between Clare Winger Harris and Stover Carl Winger, eighteen and three-fourths per cent of the net income of said trust estate for the year 1946, before payment of Federal income taxes.   In the event of the death of Clare Winger Harris or Stover Carl Winger, or both of them, the distribution of the deceased beneficiary's share, shall be made to the surviving lineal descendants of such decedent or decedents, per stirpes and not per capita.

"(b)   The successor Trustees and their successors in trust shall distribute equally among Gladys Stover Lyon, Margaret Stover Foster Howard, and Katherine D. Stover, eighteen and three-fourths per cent of the net income of said trust estate for the year 1946, before payment of Federal income taxes.   Upon the death of Katherine D. Stover, the distribution of said eighteen and three-fourths per cent of the net income shall be made equally between Gladys Stover Lyon and Margaret Stover Foster Howard.   In the event of the death of either Gladys Stover Lyon or Margaret Stover Foster Howard, or both of them, the distribution of the deceased beneficiary's share shall be made to the surviving lineal descendants of such decedent or decedents, per stirpes and not per capita.

"(c)   After making the distribution provided for in paragraphs 3 (a) and 3 (b) above, the Successor Trustees and their successors in trust shall add the balance of the net income of said trust estate for the year 1946, after payment of Federal income taxes on said balance, to the corpus of the trust, except for such

part of said balance as may be used for educational benefits as is hereafter provided.

"(d) The Successor Trustees and their successors in trust shall distribute equally between Clare Winger Harris and Stover Carl Winger thirty-seven and one-half per cent of the net income, before payment of Federal income taxes, for the year 1947, and for each succeeding year, up to the termination of the trust estate on January 18, 1967. In the event of the death of either Clare Winger Harris or Stover Carl Winger, or both of them, prior to January 18, 1967, the descendants of such decedent or decedents shall succeed to the respective rights of such decedent or decedents, per stirpes, in and to such distributable income, and in the event of the death thereafter of any of the aforesaid descendants, their descendants shall in turn succeed to the rights, per stirpes, of the persons so dying, and so on, to the end that for the balance of the trust period thirty-seven and one-half per cent of the annual income shall be distributed, per stirpes, to ·the currently proximate descendants in the May Stover Winger Thomas branch of descent.

"(e) The Successor Trustees and their successors in trust shall distribute equally among Gladys Stover Lyon, Margaret Stover Foster Howard and Katherine D. Stover, thirty-seven and one-half per cent of the net income, before payment of Federal income taxes, for the year 1947, and for each succeeding year up to the termination of the trust estate on January 18, 1967. Upon the death of Katherine D. Stover at any time prior to January 18, 1967, the Successor Trustees and their successors in trust shall distribute equally between Gladys Stover Lyon and Margaret Stover Foster Howard said thirty-seven and one-half per cent of the net income before payment of Federal income taxes, for the year 1947, and for each succeeding year up to the termination of the trust estate on January 18, 1967. In the event of the death of either Gladys Stover

Lyon or Margaret Stover Foster Howard, or both of them prior to January 18, 1967, the descendants of such decedent or decedents shall succeed to the respective rights of such decedent or decedents, per stirpes, in and to such distributable income, and in the event of the death thereafter of any of the aforesaid descendants, their descendants shall in turn succeed to the rights, per stirpes, of the persons so dying, and so on, to the end that for the balance of the trust period thirty-seven and one-half per cent of the annual income shall be distributed, per stirpes, to the currently proximate descendants in the Porter S. Stover branch of descent, subject only to the rights of Katherine D. Stover during her lifetime, as hereinabove provided.

"(f) After making the distributions provided for in paragraphs 3 (d) and 3 (e) above, the Successor Trustees and their successors in trust shall add the balance of the net income, after payment of Federal income taxes on said balance, to the corpus of the trust, except for such part of said balance as may be used for educational benefits as is hereafter provided.

"(g) The distributions above provided for shall be made monthly to the persons named or described in sub-paragraphs (a) through (e) of this paragraph numbered 3, based upon the estimates of the Successor Trustees and their successors in trust as to the amount of the net income of the trust estate, before payment of Federal income taxes, for the then current year. Within sixty (60) days after the end of the calendar year, the Successor Trustees and their successors in trust, shall determine the exact net income, before payment of Federal income taxes, for the preceding year and shall make appropriate adjustments in the payments to distributees.

"4. From July 1, 1946, until the termination of the trust, the Successor Trustees and their successors in

trust, out of the twenty-five per cent balance of net income left after distribution of the seventy-five per cent of net income to the distributees as aforesaid, to the full extent thereof if necessary, and then out of the corpus of the trust if necessary, shall pay to or for the use of each lineal descendant of May Stover Winger Thomas and of Porter S. Stover who has completed twelve years of grade and preparatory education, providing such descendant is not then entitled to benefits under paragraph 3 hereof, a sum not exceeding Seven Hundred and Fifty Dollars ($750.00) annually, to be applied exclusively to his or her education, and to be charged against the shares in said trust estate represented by his or her branch of the two branches of descent, but the total of such payments to any such lineal descendant shall not exceed Three Thousand Dollars ($3000.00). If such descendant is then entitled to benefits under paragraph 3 hereof, but such benefits are less than Seven Hundred and Fifty Dollars per year, then such descendant shall be entitled to educational payments sufficient to bring his total receipts from the trust estate to Seven Hundred and Fifty Dollars. Should the full sum of Seven Hundred and Fifty Dollars not be required for educational purposes in any one year or years by any beneficiary, the surplus may be called for at a later year or years, without interest, if needed for educational purposes, until the descendant has reached the age of twenty-five years. No descendant shall be entitled to educational benefits after he shall have reached the age of twenty-five years, except that if any descendant has heretofore, or shall hereafter, serve in the armed forces of the United States prior to reaching the age of twenty-five years, this right to educational benefits shall extend beyond the age of twenty-five years for a period corresponding to the period of such service. The term 'education,' as herein used, shall apply only to study at a legally incorporated or licensed college, univer-

sity, institution, conservatory or training school, provided, however, that the payments may be used for tuition, books, equipment, board, room, or other necessities of such educational program. The Trustees shall pay such portion of the educational benefits as is possible directly to the particular institution in which the beneficiary is enrolled, and shall take such steps as they may deem necessary to see that such portion of the benefits as is not paid directly to the institution is applied by the beneficiary to educational purposes as hereinbefore defined. If a beneficiary, after receiving any educational benefits hereunder, shall be expelled or dismissed from any such institution for scholastic incompetency or for disciplinary reasons, he shall thereafter forfeit all right to additional educational benefits.''

In order to sustain the order appealed from counsel for the adult appellees state that sufficient or substantial doubt exists as to the validity and meaning of the will of Daniel C. Stover to warrant the beneficiaries thereunder entering into a family settlement agreement and that neither the decree of the circuit court of Stephenson county of January 6, 1910, sustaining the will or the decree of that court entered on January 4, 1924, which was affirmed in *Smith v. Thomas,* 317 Ill. 150, estop these adult appellees in this proceeding. These proceedings, argue counsel, in fact form a basis for the approval by the court of this Family Settlement Agreement.

The guardian *ad litem,* representing the minor appellees states that the most conservative estimate of the present value of the trust estate is $2,000,000 but that a realistic value would be close to $4,000,000, that there has been and will always continue to be a substantial accumulation of income throughout the balance of the trust administration and that the public policy of this State has greatly changed since the execution of this will and now such policy strongly favors

the distribution of income rather than the accumulation thereof. The guardian *ad litem* states that during this same period of time, that is from the time this will was executed to the present, the general economy of this country, including interest rates, investment practices, living costs, living standards and tax policies have also greatly changed; that the fundamental purpose of the testator appears in paragraph eleven (11) of the will wherein the testator specifies his desire "to create and preserve for my grandchildren and their heirs an estate having a steady permanent income"; that the parents of some of the minor defendants might become distributees of income prior to the distribution of the corpus of the trust and in such event it would be for the best interests of such minor defendants that their parents have sizeable periodic distributions of income from the trust in keeping with, and proportionate to, the rapidly growing income from the trust. Such distributions to the parents, argue the guardian, "would necessarily benefit, enrich, improve, better and refine the standard of living and environment of the child." The guardian further states that it is possible for some of those he represents to become members of the proximate class in the line of descent prior to the distribution of the corpus and thus distributees of income, and then depart this life, prior to the distribution of the corpus, thus giving way to descendants of a lower class who would be the distributees of the corpus and if substantial distributions of income were not made, such minors would receive no benefits whatsoever from the Stover trust. The guardian *ad litem* continues: "Very small periodic distributions could greatly harm these minors and other descendants closer to the testator than the final distributees. It would certainly not be in keeping with the intention of the testator, *or with the fundamental fitness of things,* for these minors to be deprived of substantial distributions through niggardly

distributions to them or to their parents in whose homes they are being reared.'' The guardian argues that the united desires of all the beneficiaries, periodic and final, adult, minor and unborn should prevail and that it is regrettable that appellants, the trustees, whom the guardian characterizes as ''disinterested stakeholders'' should alone dissent. The guardian insists that the Family Settlement Agreement is fair and equitable to all and promotes, in a lawful manner, the fundamental, underlying, pervading purposes of the will of Daniel C. Stover and satisfies the purpose of the testator even better than the testator, himself, could have done in 1907.

Counsel for the trustee for the unborn descendants of Daniel C. Stover, in his brief states that the issue is whether or not the doctrine of family settlement as embodied and laid down in the leading case of *Wolf v. Uhlemann,* 325 Ill. 165, is applicable under the circumstances of this particular case. Counsel state that the *Uhlemann* case definitely establishes the fact that there is such a thing as a Family Settlement Agreement, and that under certain circumstances, such agreements are proper and desirable. Counsel concede that a widespread application of this principle would result in the destruction of the power of the testator to dispose of his estate and that only in rare cases should the heirs and legatees of a deceased person be given the right to agree among themselves to distribute a testator's estate in contravention to the terms of his will. Counsel then conclude that this Family Settlement Agreement is eminently fair to the persons he represents and that under the circumstances of this case the rather dangerous principle of family settlement might well be applied in order to save future expensive litigation which might or might not be successful.

In the proceeding brought by the children of the testator in 1909 to invalidate this will upon the ground

of mental incapacity and fraud and undue influence all the grandchildren of the testator then living were defendants and were duly represented by their guardian *ad litem*. The circuit court of Stephenson county had jurisdiction of all the parties and of the subject matter of the litigation and after a trial of the issues a decree sustaining the will was entered on January 6, 1910. This decree provided: "that all parties to this suit, both adults and minors, and all persons claiming or to claim by, through or under them, or either of them, are hereby forever precluded from attacking the validity of said will and codicil or either of them." Some of the adult appellees in the instant proceeding were defendants in that cause and it is they, so the petition and order appealed from and the Family Settlement Agreement all recite, who now threaten to again attack the validity of this will.

In the proceeding instituted by the trustees in 1923, seeking a construction of certain provisions of this will, the children and all the then living grandchildren of the testator were parties defendant and by their answer sought an order directing the trustees to pay them during their respective lives and to their heirs-at-law after their deaths the entire income from said estate. That court likewise had jurisdiction of the subject matter of the litigation and of all the parties then living who were interested therein and the decree then rendered by the circuit court, on January 4, 1924, provided: "It is the duty of said trustees and their successors in trust to accumulate the income in the manner provided for in said will, for and during the lives of testator's two children and the life of the survivor of the same and for and during the term of twenty-one years after the death of the last survivor." That decree also construed the provisions of paragraph four (4) of said will with relation to annuities to the son and daughter of the testator and upon ap-

peal the correctness of that portion of the decree was not challenged.

In affirming that decree the Supreme Court said (*Smith v. Thomas,* 317 Ill. 150 at page 155) : "A reading of the will indicates clearly that the testator did not intend for his children to have any interest in the corpus of his estate and that the only interest they should ever have was the right to receive an annuity of $2500.00 per annum and in certain events an additional allowance, which under no circumstances was to exceed in the case of either of them one-half the net annual income from his personal estate. They do not receive under the will a life estate or any other freehold interest in the real estate of the testator. It is also clear that the corpus of the estate and the accumulations are to go eventually to the children of May Winger Thomas and the children of Porter Stover or their descendants. The word 'heirs,' as used in the fourth paragraph of the will, is not a word of limitation describing those who are to take from generation to generation, but is a word of purchase describing the persons who are to take the estate at the termination of the trust. Where, as in this case, it is clear that the testator did not use the word 'heirs' in its strict legal sense but did use it to describe children or grandchildren, it will be given the meaning necessary to carry out the testator's intention. (*Winchell v. Winchell,* 259 Ill. 471.) Where the estate in remainder is limited to the children or grandchildren of the ancestor the rule in *Shelley's* case does not apply. (*Peacock v. McCluskey,* 296 Ill. 87; *Butler v. Huestis,* 68 id. 594; 1 Tiffany Real Property, — 2nd ed. — sec. 151.) There being neither a freehold in testator's children nor a remainder to their heirs generally, the claim of testator's children that they take a fee under the rule is without merit. (Kales Estates, — 2d ed. — sec. 413.)"

In referring to the Act of 1907 limiting the period during which income is permitted to accumulate, the court said: "The statute limiting accumulations did not go into effect until July 1, 1907, and since it applies only to wills 'executed after this act goes into effect' it does not apply to the will in question."

There are no complicated or indefinite restrictions upon the disposition or distribution of the estate of Daniel C. Stover. As stated by the Supreme Court, it was clearly the intention of the testator that the only interest his son and daughter should have in his estate was the right to receive an annuity and under certain circumstances an additional allowance derived from a portion of the income from his personal property. The will directed the trustees "to keep the same (his estate) together, and manage the same ·and to accumulate the income thereof ——— for and during the lives of my wife, Mary C. Stover, my daughter, May S. Winger (Thomas) and my son, Porter S. Stover, and the life of the survivor or survivors of them, and for and during the term of twenty-one years after the death of the last survivor of them, and then to divide the same and the accumulations thereof, between the heirs of my daughter, May S. Winger and the heirs of my son, Porter S. Stover, equally, except that in such division they shall equalize, as between said heirs, the sum which shall have been charged against said May S. Winger and said Porter S. Stover, under the terms of this will, so that the heirs of either shall receive the benefit of the economy of their parents." By this clear and unambiguous language the testator indicated that at the end of twenty-one years after the death of the survivor of his son and daughter his entire estate shall vest and be divided among the heirs of his said son and daughter. The succeeding portion of this clause of the will then provided that upon the death of both his children the trustees were authorized to pay not exceeding the sum of $1,250 to

each surviving husband or wife of his children so long as such spouse may remain unmarried. Counsel for appellees seize upon this language and insist that there was a possibility that such surviving spouse of testator's children could be born after the death of the testator and be alive and unmarried twenty-one years after the death of the survivor of his children and therefore payment under this provision could extend beyond the period of 21 years after the death of the survivor of his two children. There is absolutely no merit in this contention. The corpus of this trust vests at the end of 21 years after the death of the survivor of the two children of the testator. The will itself so states and the circuit court so held by its decree of January 4, 1924, and that holding has been affirmed by the Supreme Court.

May S. Winger Thomas, testator's only daughter, died on February 13, 1944 and on January 18, 1946, Porter S. Stover, testator's only son, died. The provisions of the will of their father for their benefit have been carried out and a definite date established, namely, January 18, 1967 when the corpus of this estate vests. The latter part of paragraph four of the testator's will authorizes the trustees to pay not exceeding the sum of $1250.00 to or for the support of the children of said son and daughter and to be distributed as in the judgment of the trustees may be advisable and under paragraph five the trustees are directed to pay to or for the use of each grandchild of the testator, between the ages of twelve and twenty-five a sum not exceeding one thousand dollars annually to be applied exclusively to their education.

The amount these heirs of the testator will henceforth receive each year under his will, until their death or until the termination of the trust, may be a comparatively small sum. The difference between the amounts so paid as provided by the will and the total amount of income received by the trustees will

be added to the corpus of the trust. This is what the testator directed and what he intended. The fact that these present heirs are dissatisfied and wish to receive a larger amount than the creator of the trust desired them to have and the further fact that the corpus of the trust will be substantially increased each year from the accumulation of income, affords no reason why the expressed wishes of the testator should not be respected. After all it was Daniel C. Stover's property that Daniel C. Stover disposed of by his will and he was the creator of this trust. There is no substantial disagreement among appellees. All the evidence leads to but one conclusion and that conclusion is that they all feel just as some of them felt in 1923 and just as the son and daughter of Daniel C. Stover felt during his and her lifetime and that is that the income from this trust should be distributed to them and that their ancestor's wishes should give way to their desires.

Under the Family Settlement Agreement an arbitrary 75 per cent of the net income of this trust will be distributed each year and in addition the remaining 25 per cent of the net income is to be used for and is subject to, the payment of educational benefits to those who are eligible, not under the terms of the will, but under the terms of the Family Settlement Agreement. It is clearly apparent that the difference between whatever sum of money appellees would receive under the provision of the Family Settlement Agreement prior to January 18, 1967, and the maximum amount they would receive under the provisions of the will, is the amount the corpus of the estate would be diminished. Just how much this would be is not susceptible of definite computation. Counsel for appellants, basing his computation upon the record and what it discloses as to the amount of income received by the trustees from its inception states that the corpus would be diminished at least half a million dollars. The amount

is not material. It would be a substantial sum and its depletion in any amount would be at the expense, and to the detriment, of those to whom distribution is to be made when the trust is terminated. The only conclusion that can be arrived at from a consideration of this record is that the carefully prepared plan of the testator to increase the corpus of the trust by accumulations derived from income would be practically destroyed and that the provisions of the Family Settlement Agreement substitutes the wishes, desires and plans of the present beneficiaries, adults and minors, for the clearly expressed intention and plan of the testator.

The procedure and Family Settlement Agreement in the instant case follows the pattern used in *Wolf v. Uhlemann*, 325 Ill. 165. The factual and legal situation here, however, are entirely different. In the *Wolf* case the court found that the will was so involved and complicated and its provisions so uncertain in legal meaning that the parties beneficially interested in the estate might well doubt what their rights were under the will and its ambiguity would justify them in seeking to have the will construed and that the proposed Family Settlement Agreement was fair to all parties having a pecuniary interest in the estate and that any unborn issue had not been and could not be injured or prejudiced by the agreement. In the instant case if the trustees or parties beneficially interested in the trust desire any further judicial determination of the meaning of the provisions of this will or if the trustees desire directions as to their duties, they may invoke the jurisdiction of the appropriate court. The language used by the court in connection with the will involved in the *Wolf* case to the effect that its provisions were so involved and complicated and so uncertain in legal meaning, cannot be appropriately applied to the provisions of the Stover will. Furthermore the heirs at law of the testator, many

years ago, unsuccessfully contested its validity and after its validity had been established sought and obtained a construction of its meaning. It was said in the *Wolf* case that courts of equity favor the settlement of disputes among members of, a family by agreement rather than by resort to law and where there is a reasonable and substantial basis for the belief or assurance that prolonged and expensive litigation will result over the proceeds or distribution of an estate and that the estate will be materially depleted and the family relationship will be torn asunder, that then the parties interested are warranted in preventing such bona fide family controversy by a settlement agreement. In the instant case there can be no reasonable and substantial basis for a belief in the minds of any of the appellees that prolonged and expensive litigation will result over the distribution of this estate or that the estate will be materially depleted thereby or that the family relationship of appellees will be disturbed or rendered inharmonious. The court in the *Wolf* case recognized that members of a family are not privileged to alter the terms and provisions of a will merely for the convenience of the family or for the sole purpose of securing greater individual financial advantages than those specified in the will and intended by the testator. If the Family Settlement Agreement here is approved and validated, the effect would be that the members of the Stover family would be privileged to alter the terms and provisions of their ancestor's will merely for their own convenience and in order to secure greater individual financial advantages than those provided in the will and intended by the testator. The conclusion reached in the *Wolf* case is not, in our opinion, authority to sustain the decree in the instant case. On the contrary, our conclusion is in perfect harmony with the holding in the *Wolf* case.

*Rogers v. English,* 130 Conn. 332, 33 A. (2d) 540, 147 A. L. R. 812, was a proceeding to construe the will of Constand A. Moeller which contained provisions somewhat similar to those found in the Stover will. One of the questions there presented for determination was whether, on account of the change in circumstances after the execution of the will creating the trust, there could be a variation of the specific amount of money which the testator had directed the trustees to pay to named beneficiaries. In answering this question in the negative and in the course of its opinion the court said:

"The claim most strenuously pressed upon us is that of certain of the annuitants, who contend that the trustees may, in view of existing circumstances, make larger annual payments to the beneficiaries than those specified in the will. They point to various changes which have taken place in the economic conditions since the death of the testator; the imposition of the federal income tax, the effect of which is to decrease the amounts of payment to the beneficiaries which they can use for their own purposes; the increase in the cost of living and the decrease in the purchasing power of the dollar. They claim that an increase in the annual payment is necessary to accomplish what they contend to have been the general intent of the testator, to provide comfortable support for his children or, as stated in one place in their brief, to provide a standard of living in keeping with that which he had taught them to expect; that the fixing of the amount of the annuities was a special intent, which, if in conflict with this general intent, must yield to it; and that the changes in circumstances to which we have referred have produced such a conflict. We are, of course, confined to the intent expressed in the will and may not go outside of it in the effort to give effect

to what we conceive to have been the actual intent of the testator, much less his 'motive,' to quote an expression from the brief of these parties, in making the provisions he did.''

Following the report of this case in 147 A. L. R. 819 will be found an annotation upon this question. The case of *Jennings v. Hills,* 247 Ill. App. 98, where the court declined to increase the amount of the annuities over and above those named by the testator, is cited. *Union Savings Bank & Trust Co. v. Alter,* 103 Ohio St. 188, 132 N. E. 834, is also referred to. In the *Alter* case the court reversed a decree of the lower court increasing an annual allowance made by the testator to his children and in the course of its opinion uses language which we think is particularly appropriate here. The court there said:

''If the courts are to enter the field of distributing estates in such manner as will in their judgment accomplish the most beneficial results to the legatees, and are to distribute the bounties of the testator according to the needs of the beneficiary and the sense of equity and justice of the court, rather than according to the intention of the testator, to what purpose is the right conferred by statute upon every person of full age, sound mind and memory, and not under restraint, to give and bequeath his property by last will and testament? A testator when he comes to distribute his bounty by last will and testament takes into consideration his affection for and obligation to the beneficiary, the beneficiary's needs, ability, capacity and many other things of which he has peculiar knowledge, and it is because of such consideration that he makes a last will and testament at all. Is a court, a stranger to the controlling motive of the testator, to assume to amend the will, because in its opinion some other disposition would have been more beneficial to the legatee? Where no last will and testament is executed,

the law casts the estate upon the heirs and distributees, without reference to their circumstances or needs, and without reference to the affection or obligation of the ancestor, and no court is permitted to divert the course of the estate's descent. The right to pass property by will having been conferred by statute, and the right to inherit intestate property having been conferred by statute, what argument can be advanced in favor of thwarting the will of the testator in favor of the needy legatee that cannot with equal force be urged with reference to the needy heir under the laws of descent and distribution? In extreme cases, in England, as well as in certain jurisdictions in America, the courts, under the guise of doing what the court imagines the testator would have done had he foreseen the situation, have gone a long way toward the substitution of the will of the court for that of the testator; but no such invasion of the right of the testator has been made in Ohio, and we are not convinced that the benefits to be derived from the assumption and exercise of such power by the courts would compensate for the evils which would necessarily flow in its wake.''

The decree appealed from which approved the Family Settlement Agreement was entered on January 28, 1947. It contained this paragraph: "It is agreed by and between all the parties hereto that in the event either the circuit court of Stephenson county, Illinois, or a court of last resort on review, disapprove this contract, the rights of all parties hereto shall be the same as if this contract had never been entered into and thereupon, the decree entered in Cause No. 03233 on the 28th day of June A. D. 1946 and subsequently vacated, shall be re-entered with leave to appeal to the trustee for the unborn lineal descendants of May Stover Winger Thomas and Porter S. Stover granted.''

[4] Counsel for appellants insist that the correctness of the decree of January 28, 1947, and the correct-

ness of the decree of June 28, 1946, are involved in this appeal. The notice of appeal is from the decree of January 28, 1947 and makes no reference to the decree of June 28, 1946. The decree of January 28, 1947, did not vacate the decree of June 28, 1946. That was done by an order entered on July 12, 1946. After that order was entered on July 12, 1946, the situation was the same as though the decree of June 28, 1946 had never been rendered. (Freeman on Judgments, Fifth Ed. Vol. 1, page 594.) In our opinion the provisions of the decree of June 28, 1946, are not before us for review upon this record. In fact there is no decree of June 28, 1946. It was vacated. No one ever appealed from its provisions. The record shows that the trustee for the unborn heirs threatened to appeal but the decree was vacated. According to the provisions of the decree which we are reviewing the parties stipulated that in the event a court of last resort on review, disapprove this contract that then the decree of June 28, 1946, shall be re-entered. Certainly we are not called upon, on this record to review the provisions of a vacated decree.

The decree of January 28, 1947, is reversed and this cause is remanded to the circuit court of Stephenson county with directions to proceed consistent with the views herein expressed.

*Reversed and remanded with directions.*